UNITED STATES of America, Appellee,

v.

Jack KAPLAN, Appellant.

No. 76–1179.

United States Court of Appeals,
Third Circuit.

Argued Feb. 18, 1977.

Decided April 11, 1977.

Stephen M. Greenberg, Robinson, Wayne & Greenberg, Newark, N. J., for appellant.

Jonathan L. Goldstein, U. S. Atty., John J. Barry, Asst. U. S. Atty., Newark, N. J., for appellee.

Before SEITZ, Chief Judge, and VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

■■ The prosecution's obligation to furnish exculpatory material to the defense in a criminal case is firmly established. Not always as clear, however, is the time when that duty must be performed. Recognizing some truth in the adage "better late than never," we conclude that in this case the production of favorable evidence during trial is not reversible. We reach our conclusion because of the lack of demonstrated prejudice, though we disapprove and discourage a practice of delayed production.

The defendant Kaplan was convicted on seven counts of filing false personal and corporate income tax returns [1] during the time he served as president and chairman of the board of Spiral Metal Company, South Amboy, New Jersey. The prosecution resulted from his scheme to siphon off cash from the corporation by falsifying its inventory. Kaplan arranged to have Spiral Met-

al checks—together with fictitious purchase orders—issued ostensibly for the purchase of precious metals customarily used in the company's operations. He delivered the checks to either Mario Betancourt or Daniel Roberts who cashed them, generally at Kaplan's bank, returned the proceeds to the defendant, and received a commission for their services. The defendant did not report this cash as income on his personal tax returns, and the corporation improperly deducted the "purchases" on its returns.

Roberts, a key government witness, owned the Mercury Trading Company which on infrequent occasions supplied merchandise to Spiral Metal. In most of his dealings with Kaplan, however, Roberts only cashed Spiral's checks payable to himself or Mercury and remitted the money to the defendant. Fictitious Mercury purchase slips documented these transactions. Consequently, Spiral's records of disbursements and purchases were in balance, although the inventory was less than the company's records demonstrated.

Before trial, the defendant moved for production of documents pursuant to Fed.R. Crim.P. 16, and by agreement the prosecution delivered some papers to defense counsel. The government, however, declined to turn over records received from Roberts and, on June 3, 1975, deposited them with the trial judge for his ruling on discoverability. At a pretrial conference six days later, the court ruled in the government's favor and retained possession of the records. It was understood that this voluminous collection of documents was to be made available to defense counsel the evening before Roberts took the witness stand.

Trial began on June 25, 1975, and on July 2, the prosecutor stated that he had no objection to defense counsel reviewing the documents then in the judge's chambers. The defendant's lawyer did not examine the records until six days later, after Roberts and his wife had completed their testimony.[1a] The following morning, July

---

1. 26 U.S.C. § 7206.

1a. Some documents (those used during the direct examination) had already been provided to the defense prior to the trial. During cross-examination, Roberts testified that these materials represented all documents that were available, a representation that was not corrected by

9, 1975, defendant moved for dismissal of the indictment, a mistrial, or the opportunity to recall Roberts, alleging that the government had failed to produce *Brady* material. Defense counsel, avowedly not relying on Fed.R.Crim.P. 16, characterized the Roberts records as exculpatory within the ambit of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The court granted the motion to recall Roberts for further cross-examination and, because of the large number of documents involved, recessed the trial until July 11, 1975 so that defense counsel could review the papers in detail.

When Roberts was recalled for further cross-examination, defense counsel used some of the documents for impeachment purposes. After being shown certain invoices and similar records, the witness admitted that on those occasions he had delivered merchandise to Spiral and, to that extent, his testimony on direct examination was erroneous. The jury nevertheless found the defendant guilty on all counts.[2] The district judge denied motions for judgment of acquittal and new trial, concluding that the belated access to the documents and other assigned errors did not warrant vacating the conviction.

The government produced Roberts' testimony to show he had received Spiral checks for merchandise although none had been delivered. According to the defendant,

since some of the documents proved that merchandise had in fact been delivered on certain occasions, the records were exculpatory in nature. Therefore, he argues, the material should have been turned over in advance of trial and, further, the prosecution's tardy tender did not permit adequate investigation and evaluation.

■ The rule of *Brady v. Maryland* is founded on the constitutional requirement of a fair trial, binding on both state and federal courts. It is not a rule of discovery. As the Supreme Court said in *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977):

> "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one . . . 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded. . . .' *Wardius v. Oregon,* 412 U.S. 470, 474 [93 S.Ct. 2208, 2212, 37 L.Ed.2d 82] (1973)."

However, Fed.R.Crim.P. 16, applicable only to federal courts, permits discovery in advance of trial. While the rule has been criticized as unduly restrictive, it does provide that upon request the defendant may inspect documents in the control of the government.[3]

■ Where documentary evidence is exculpatory, it may be within both *Brady* and

---

the prosecution until much later. Subsequently, it was revealed that those documents in the trial judge's chambers were substantially more numerous than those given previously to the defense; in addition, there are indications in the record that the reproduced copies used during direct examination did not contain all of the information in the originals held by the judge; the deleted portions were material to the issue of exculpation. Even though the conduct of the prosecutor was not without fault, it does not require reversal in this case for the reasons stated in the opinion.

**2.** Through Roberts, the government introduced some 62 checks evidencing check cashing transactions. The "suppressed" documents referred to only a few of the transactions. Despite the impeaching evidence, the government had a strong case.

**3.** Rule 16. *Discovery and Inspection*
  (a) *Disclosure of Evidence by the Government.*
  (1) *Information Subject to Disclosure.*

  \* \* \* \* \* \*

  (C) *Documents and Tangible Objects.* Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Rule 16, but nonexculpatory records are obtainable in advance of trial only by virtue of Rule 16. It is conceivable that some documents which are not covered by Rule 16, *e.g.,* a Jencks Act statement, may be *Brady* material because of their content. Thus, on occasion there will be an overlap between the two means a federal defendant uses to obtain information in the possession of the prosecution. This case appears to present such a situation, but we perceive no undue difficulty since the timeliness requirement here is judged by the same standard. *Government of Virgin Islands v. Ruiz,* 495 F.2d 1175 (3d Cir. 1974).

■ We assume, without deciding, that the documentary evidence was exculpatory material. *Cf. United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). But even so, we cannot accept defendant's contention that there was a *Brady* violation here. This is not a situation where the withheld information was discovered only after conviction, but one where the evidence became available to the defense during trial. Any failure to produce exculpatory matter came to the attention of the defense before the government concluded its case, and the defense utilized the evidence. Therefore, one salient fact stands out: the exculpatory documents were brought to the jury's attention. In this situation, there is no justification for granting a new trial so that a different jury might hear the same evidence. A delayed disclosure by the prosecution is not per se reversible error. In *United States v. Harris,* 498 F.2d 1164 (3d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974), in far more egregious circumstances, this court held that the defense must seek appropriate action by the trial judge and bring the challenged matter before the jury. There, as here, knowledge of impeaching matter was received by the defense during the trial.

■ *Government of Virgin Islands v. Ruiz, supra,* rejected complaints about the production of evidence under *Brady* and

Fed.R.Crim.P. 16 where the defendant characterized the government's compliance as "grudging, tardy and prejudicial." Although the prosecution's turnover was late, we found no prejudice since it occurred during trial and the evidence was submitted to the jury. If exculpatory evidence can be effectively presented at trial and the defendant is not prevented by lack of time to make needed investigation, there is no reversible prosecutorial conduct in ill-timed presentation. *See also, United States ex rel. Paxos v. Rundle,* 491 F.2d 447 (3d Cir. 1974); *United States v. Pollack,* 175 U.S. App.D.C. 227, 534 F.2d 964 (1976); *United States v. Anderson,* 481 F.2d 685 (4th Cir. 1973), *aff'd,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *United States v. Felts,* 497 F.2d 80 (5th Cir.), *cert. denied,* 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974); *United States v. Clark,* 538 F.2d 1236 (6th Cir. 1976); *United States v. McMillian,* 535 F.2d 1035 (8th Cir. 1976); *United States v. Miller,* 529 F.2d 1125 (9th Cir.), *cert. denied,* 426 U.S. 924, 96 S.Ct. 2634, 49 L.Ed.2d 379 (1976); *United States v. Palmer,* 536 F.2d 1278 (9th Cir. 1976).

We can find no evidence of prejudice in the record before us. Defense counsel apparently was satisfied with the additional time granted by the trial judge to examine the documents. After the recess ended, defendant's lawyer did not ask for any more time nor did he assert that any more was required. Even though over one thousand documents were allegedly involved, no renewed mistrial motion was made during the trial after Roberts was re-examined on July 11. Nothing of record shows that further investigation was needed or could not have been completed before July 11, 1975. There is no reason to believe that an examination of the documents prior to trial would have developed information substantially different from that brought out during the trial. In these circumstances, what would be a reasonable opportunity for review and evaluation must rest with the informed judgment of the trial court. We can find no error in the remedial measure adopted

by the trial judge, and believe that he acted in a proper and considerate manner.[4]

 We agree with the trial judge that, in retrospect, it would have been preferable to have permitted defense counsel to examine the documents well in advance of trial. While the belated turnover is not reversible, it certainly was not desirable and we do not encourage it. In a case of this nature, delayed disclosure results inevitably in trial delay. The main effect here was to impose an unnecessary burden upon the defense lawyer's constitution, *United States v. Jones,* 492 F.2d 239 (3d Cir. 1974), but it did not result in an unfair trial to the defendant, constitutionally or otherwise.[5]

The judgment of the district court will be affirmed.

---

**4.** Roberts' initial cross-examination was completed on July 8, and he was recalled on July 11. The government thereafter called four other witnesses and rested its case on the same day. It is possible to envision a situation where a witness is recalled at the end of a lengthy trial where the lack of prejudice may not be as clear. However, that circumstance is not present here.

**5.** The defendant raises a number of other issues, none of which establishes reversible error. The witness Betancourt was interviewed by the prosecutor in preparation for trial and labeled a number of checks which he said were involved in the fraud. Since he had signed the visitor's register on days when Kaplan gave him checks, the witness used the register as an aid to identifying the checks in question. This procedure was explained during Betancourt's testimony, and the visitor's register was available to the defense on cross-examination. We find no error in this procedure.

Defendant also asserts that an exhibit entered in evidence was not transmitted to this court as part of the record on appeal. This evidentiary matter was brought to the attention of the jury and seemingly was intended to impeach the witness' credibility. We do not consider it necessary for a proper disposition of this appeal. Prosecutorial misconduct and lack of evidence to support the verdict are also alleged to be grounds for reversal. We find these contentions to lack merit.