381 So.2d 796 (1980)
STATE of Louisiana
v.
Harold G. ROUSSEL, Jr.
No. 65342.
Supreme Court of Louisiana.
February 15, 1980.
Rehearing Denied April 7, 1980.
*797 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., David J. Cortes, Asst. Dist. Atty., for plaintiff-appellee.
Bernard S. Dolbear, New Orleans, for defendant-appellant.
CALOGERO, Justice.
On February 16, 1978, defendant Harold G. Roussel, Jr. was indicted by the Orleans Parish Grand Jury for the aggravated rape of a twenty-three year old New Orleans woman (who will be referred to hereafter as Ms. Jones). Defendant waived his right to a jury trial and was tried before a judge who found him guilty of forcible rape and sentenced him to twelve years imprisonment at hard labor. On appeal to this Court defendant argues three assignments of error.
At approximately 12:15 p. m. on the night of January 21, 1978, Ms. Jones offered a ride to a hitchhiker on St. Charles Avenue in New Orleans. Shortly after getting in the car the rider asked her if she wanted to smoke some marijuana. When she stated that she did, the rider told her to drive to the 1600 block of Carondelet Street. The rider got out of the car and disappeared down an alley separating 1628 and 1630 Carondelet Street. The man returned shortly thereafter with some marijuana.
Ms. Jones then started driving back towards her home in uptown New Orleans. When she reached Coliseum Square she agreed to pull over at the man's request so that he could roll a marijuana cigarette. While they were smoking the cigarette the rider began making advances. When Ms. Jones resisted, the man grabbed her by the throat and forced her over into the passenger seat. The rider took her purse, locked both doors, and began driving in an uptown direction. The man drove around with Ms. Jones in the car for an undetermined amount of time, possibly as long as an hour and a half. At periodic intervals the hitchhiker threatened to kill Ms. Jones, stating at one point that he would "blow her brains out" if she refused to cooperate.
Finally the hitchhiker drove back to a warehouse area along the river near South Front and Marengo Streets, stopped the car, told the victim that he had a gun and threatened to shoot her. The man then proceeded to rape her. When he finished the hitchhiker cleaned himself with Kleenex and ordered Ms. Jones to do the same and to throw the tissue out of the window when she was finished.
The rapist started the car and while proceeding back towards Carondelet Street looked at Ms. Jones' identification in her wallet. He stopped the car somewhere on Carondelet Street and warned Ms. Jones that he knew where she lived and that if she said anything he would "Close your mouth for good." Before leaving the car he wiped off the door handles, the stick shift, and the steering wheel with tissue. He left the car, taking her gloves and money with him.
Ms. Jones drove home, took a bath, and slept until mid-afternoon. When she awoke she drove to a restaurant and bar looking for an off-duty police officer to talk to. *798 The proprietor introduced her to a plainclothes policeman who advised her to call the police station.
She did so and after the police arrived the victim gave a description of the rapist to a detective, informing him that the rapist had a tattoo on his left arm shaped like an "X." Ms. Jones then accompanied the detective to the block of Carondelet Street where the defendant had obtained the marijuana and to the spot where the rape had taken place. The detective recovered several pieces of Kleenex tissue at that spot which later proved to have traces of sperm and seminal fluid on them.
One week after the rape took place Ms. Jones recognized the rapist standing outside of a bar on Prytania Street wearing the same coat that he had worn on the night of the rape. She stopped in the vicinity and walked past the bar where she saw defendant inside, by then using the telephone. She called the police. They came and arrested defendant. He had the victim's gloves in his coat pocket.

ASSIGNMENT OF ERROR NO. 1.
Defendant's principal argument on appeal is that the state improperly withheld exculpatory evidence despite defendant's general pre-trial request for all exculpatory material. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendant contends that the state should have disclosed evidence, known to the state, that the victim was an ex-heroin addict who had served five years in a Texas penitentiary for possession of heroin, and that on the night of the rape Ms. Jones was under methadone treatment and smoked a marijuana cigarette with her attacker shortly before the rape. Ms. Jones admitted to the above facts at trial.
When the reliability of a witness may be determinative of guilt or innocence, evidence which impeaches the testimony of that witness may fall within the Brady rule that the state must disclose material exculpatory evidence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Bailey, 367 So.2d 368 (La.1979). We assume without deciding that the material here is Brady information which should have been disclosed prior to trial. However, the finding that the state should have disclosed certain information prior to trial and did not, does not necessarily require that a defendant's conviction be reversed. State v. Falkins, 356 So.2d 415 (La.1978).
Reversal of a conviction is not required under Brady unless the omission of the non-disclosed evidence deprived defendant of his constitutional right to a fair trial. State v. Falkins, supra. The United States Supreme Court in United States v. Agurs stated the test an appellate court must use in determining whether defendant's right to a fair trial has been violated by the non-disclosure of evidence, where, as in the instant case, only a general request for exculpatory material has been made:
"It necessarily follows that [in a post-trial hearing by the court] if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." United States v. Agurs, 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976).
In the present case, however, the issue is not what effect non-disclosed evidence might have had on the trier of fact (the judge heard the impeaching evidence at trial), but whether the late disclosure of the impeaching evidence so prejudiced the defendant that he was denied his constitutional right to a fair trial. State v. Manning, 380 So.2d 46 (La.1980), United States v. Kaplan, 554 F.2d 577 (3 Cir. 1977), United States v. Miller, 529 F.2d 1125 (9 Cir. 1976). We conclude that the state's failure to disclose *799 the alleged exculpatory information prior to trial did not deprive defendant of his right to a fair trial.
Defense counsel learned that Ms. Jones had smoked a marijuana cigarette with her assailant when she testified on direct examination. Shortly after defense counsel began cross-examination of Ms. Jones, she stated that she was in a vocational rehabilitation program. When defendant asked what she was being rehabilitated from, the victim admitted to being an ex-heroin addict. Upon further questioning the victim admitted to serving five years in a Texas prison after being convicted of possession of heroin. When direct examination resumed the victim testified that she had successfully completed a drug rehabilitation program. On re-cross the victim admitted that she was taking methadone as part of a methadone treatment program at the time of the rape.
Defense counsel's cross-examination of Ms. Jones on the details of her use of drugs and her prior drug conviction was thorough and extensive. In response to his questioning the victim admitted that she had originally been sentenced to probation for possession of heroin, but her probation had been revoked and she had to serve five years in prison, completed two years before this rape. In addition to establishing that Ms. Jones was undergoing methadone treatment at the time of the rape, defense counsel showed that Ms. Jones had agreed to smoke marijuana with the hitchhiker after driving two blocks from the place where she had picked him up.
The record demonstrates that defense was able to effectively present all such impeaching material within the state's possession to the trier of fact. See United States v. Miller, supra. There is no justification here for granting a new trial so that a different judge or jury could hear the same evidence, a point tacitly admitted by defendant in brief when explaining why he had not asked for a mistrial: "By this time the Trial Judge had heard and seen the evidence presented and a mistrial would only be a re-play by a now well-rehearsed prosecution . . ." (emphasis provided)
However, defendant raises two arguments why this Court should grant a new trial notwithstanding the fact that the allegedly exculpatory material was presented to the trier of fact:
(1) Defendant contends that if the state had disclosed the evidence prior to trial, defendant would have chosen to be tried by a jury, and
(2) The state's failure to disclose prevented the defendant from presenting the testimony of experts who could perhaps have described the effect marijuana smoking would have upon a person taking methadone.
The crux of defendant's first argument is that he would have chosen a trial by jury rather than a judge trial if he had known before trial that the victim was an ex-heroin addict who had smoked marijuana with her alleged assailant. Defendant argues that a jury would more likely have attached greater significance to these factors in assessing defendant's guilt or innocence.
Defendant's argument is not especially persuasive. His defense was not that the convicted drug addict victim had consented to intercourse. Rather his defense was alibi. He contended that he had never seen the victim before trial and that at the time in question he was helping a friend work at a service station. This reasoning does not entirely defuse his argument, however, for he could argue that non-disclosure affected the defense his client chose, or alternatively, that even with a non-proven alibi defense a jury disposed to look disparagingly upon the victim's character might have acquitted anyway.
The primary reason, however, that we find this argument without merit is that the defendant misconstrues the scope of Brady. Brady is not a rule of discovery designed to help defendants decide tactical questions such as whether to waive trial by jury. United States v. Kaplan, 554 F.2d at 579. The purpose of the Brady rule is to insure that defendants receive their constitutional right to a fair trial guaranteed by *800 the due process clause, a trial in which the trier of fact has before it all available material exculpatory evidence. Defendant received his constitutionally mandated fair trial and is not entitled to a new trial because he has decided after being found guilty by a judge that he might have fared better before a jury. Defendant would have been tried by a jury, but he knowingly and intelligently chose to waive that right. Article I, Section 20, Louisiana Constitution, C.Cr.P. art. 780.
Defendant's second argument is that the state's failure to disclose the evidence prior to trial prevented defendant from presenting expert testimony on the effect marijuana smoking has upon a person on methadone. Defendant contends that he was denied his due process right to a fair trial because the state's failure to disclose timely prevented defendant from presenting testimony on the significance of the alleged exculpatory material.
In light of the victim's detailed and accurate testimony and other corroborating evidence, it is doubtful that such expert testimony (even if it had been presented and assuming it would have been to the effect that a marijuana smoker on methadone has problems with respect to powers of observation and memory) would have created a reasonable doubt as to defendant's guilt.[1] Nonetheless, we need not speculate on the possibility that such expert testimony that defendant might have presented may have created a reasonable doubt as to defendant's guilt,[2] because defendant did not object at trial to this late discovery of alleged Brady material. At trial he did not argue prejudice from an inability to present such expert testimony, and did not ask the trial judge for a recess in the judge trial so that he might have time to prepare and present this expert testimony. C.Cr.P. art. 729.5; C.Cr.P. art. 841. If defendant were prejudiced by the alleged prosecutorial error in failing to disclose the impeaching material prior to trial, defendant had the power to cure any error and eradicate any resulting prejudice by asking the trial court for a recess when he learned about the alleged Brady material at trial. See United States v. Dansker, 565 F.2d 1262, 1265 (3 Cir. 1977); United States v. Shelton, 588 F.2d 1242 (9 Cir. 1978).
We agree with the trial judge that it would have been preferable if the prosecution *801 had disclosed the information at issue here prior to trial. Non-disclosure and tardy disclosure of information which may constitute Brady material invite delay, protracted litigation, and involve the risk that an otherwise valid conviction must be reversed and a new trial ordered. Nonetheless, in the case at bar defendant's late discovery of the alleged exculpatory information did not deprive defendant of an opportunity to effectively present the alleged Brady material to the trier of fact. Therefore we cannot say that defendant was denied his constitutional right to a fair trial. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment defendant urges that the trial court erred in allowing into evidence hair samples taken from the defendant and from a brush allegedly left in the victim's automobile. This contention is based upon defense counsel's argument that no foundation was laid for the introduction of such samples into evidence.
The test for admissibility of demonstrative evidence was described in State v. Paster, 373 So.2d 170 (La.1979):
"To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Drew, 360 So.2d 500 (La.1978)."
In the case at bar, Ms. Jones identified State Exhibit 5 as a hairbrush found in a vent on the driver's side of her 1976 Toyota Celica, some five or six days after the alleged offense. Since the brush did not belong to Ms. Jones or any of her friends, police suspected that it may have been left in the vehicle by defendant. Following defendant's arrest, Detective Ortigue took the brush from Ms. Jones's vehicle and turned it over to Detective Cobb. Detective Cobb identified the brush as the one received from complainant and testified that she entered it into the police evidence locker.
For purposes of comparison, Officers Wood and Calo of the New Orleans Police Department requested and received from the defendant several strands of hair from his head. This sample was then placed in an envelope and placed in Detective Cobb's custody.
Both samples were subsequently given to crime lab officer Daniel Waguespack for microscopic comparison. At trial, Waguespack identified both samples and reported that his microscopic examination showed substantial similarity between the two samples. In fact, the Officer's analysis showed the two samples to be similar in all microscopic characteristics. However, Officer Waguespack also admitted that hair analysis had not yet reached such a degree of sophistication as to allow definite identification of an individual.
Under these circumstances the hair samples are admissible under the "more probable than not" test enunciated in Paster, supra. The hairbrush and hair samples were identified both visually and by chain of custody as the material related to this case. Furthermore, the trial court was correct in ruling that questions relative to the state of the art of hair analysis went to the weight rather than to the admissibility of the evidence. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4[3]
By this assignment, defendant claims that his sentence is excessive, in violation of *802 Art. I, § 20 of the 1974 Louisiana Constitution.
On August 15, 1978, following his conviction of forcible rape, defendant Roussel was sentenced to twelve years at hard labor in the custody of the Louisiana Department of Corrections. Since this was defendant's first felony conviction, the trial judge recommended incarceration at the first offender institution at DeQuincy. The minimum prison term for the offense of forcible rape is two years, but the trial court may, in the exercise of its sentencing discretion, elect to imprison an offender for any term between two and forty years. La.R.S. 14:42.1.
However, by reason of the state constitutional prohibition against excessive sentences, the trial judge does not possess unbridled discretion to impose a sentence within statutory limits. This Court has determined that excessiveness of sentence poses a question of law reviewable under its appellate jurisdiction. State v. Sepulvado, 367 So.2d 762 (La.1979). In reviewing excessiveness of sentences, this Court has noted that ". . . the statutory criteria legislatively provided by La.C.Cr.P. art. 894.1 (1977),[4] which are similar to those evolved by courts in other American jurisdictions with a constitutional or statutory duty to review excessiveness, provides appropriate criteria by which to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternative." See also State v. Cox, 369 So.2d 118 (La.1979).
In complying with the mandate of Article 894.1 the trial judge found that defendant was in need of correctional treatment. This finding was based on this offense as well as Mr. Roussel's numerous arrests for minor offenses and his history of trouble in school. The court emphasized the seriousness of Mr. Roussel's offense, noting that the victim had been kept with the defendant for a long period of time either at gunpoint or by use of threats which the victim believed were backed by a weapon. Finding that defendant had shown no remorse for the offense, Judge Becker then imposed a sentence of twelve years' imprisonment.
Testimony adduced at trial provides an ample basis for Judge Becker's sentencing decision. The victim was taken by defendant to a deserted warehouse area *803 in New Orleans and there forced to perform various sexual acts following threats by the defendant that he would kill her if she refused to cooperate. At all times, the victim believed Mr. Roussel to be holding a gun. Before departing, defendant robbed the victim and threatened (after looking at her identification) "to get her" if she ever spoke to the police. It is clear that defendant's act was quite serious. Defendant acted in utter disregard of the harm his conduct might cause.
The record reveals only one possible mitigating circumstance, that being the defendant's status as a first felony offender. This factor was considered by the trial judge in imposing the twelve year sentence, and no doubt accounted for the judge's recommendation of incarceration at a first offender facility. The facts adduced in the instant case gave the trial judge adequate reason to impose a twelve year sentence. There has been no abuse of the trial court's sentencing discretion.
This assignment is without merit.

Decree
For the foregoing reasons defendant's conviction and sentence are affirmed.
AFFIRMED.
SUMMERS, C. J., dissents.
NOTES
[1] The following evidence strongly supports the judge's finding of guilt:

(1) On the day after the rape before Ms. Jones had any clue as to the rapist's identity (or even if the rapist lived in the New Orleans area) she took a detective to an alley between 1628 and 1630 Carondelet Street that she had seen the rapist enter when he went to get some marijuana. When the police arrested defendant they discovered that he lived at 1630 Carondelet Street.
(2) Ms. Jones' description of the assailant's appearance given to an officer the day after the rape matched that of the defendant.
(3) The victim's description of the design and location of a tattoo on her assailant's arm matched that of a tattoo on defendant's arm.
(4) The Kleenex tissue found at the location where Ms. Jones had told the police the rape had taken place, when tested, proved positive for the presence of sperm and seminal fluid.
(5) Seminal fluid was found on the underwear worn by Ms. Jones on the night of the rape and turned over to the police the next day.
(6) A hairbrush in Ms. Jones' car not belonging to Ms. Jones or any of her friends contained strands of hair with characteristics similar to defendant's.
(7) Defendant was wearing a coat at the time of his arrest which Ms. Jones recognized and identified as the same coat that her attacker wore.
(8) The victim's gloves were found in defendant's coat pocket when he was arrested.
(9) The victim had told the police on the day after the crime that before the rider got out of her car to obtain some marijuana, he took off his coat and left it in her car despite the fact that it was raining and cold that night. An explanation for this peculiar behavior occurred when the defendant's mother took the witness stand and stated that defendant and his brother were constantly fighting because defendant continued to wear his brother's coat without permission.
[2] The United States Supreme Court specifically rejected the proposition advanced by defendant, that Brady requires that the defendant be granted a new trial where additional material "might have helped the defense" or "might have affected the outcome of the trial." United States v. Agurs, 427 U.S. at 108, 109, 96 S.Ct. at 2400.
[3] As Assignment of Error Number 3 was not argued in brief, it is assumed to be abandoned.
[4] La.C.Cr.P. art. 894.1 provides:

"A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence."