553 So.2d 931 (1989)
STATE of Louisiana
v.
Ryan DOZIER & Renoald Elliot Muse.
No. 88-KA-0765.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1989.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for appellants.
*932 Harry F. Connick, Dist. Atty., Brian T. Treacy, Asst. Dist. Atty., New Orleans, for appellee.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
BYRNES, Judge.
Co-defendant Ryan Dozier and Renoald Muse appeal their jury convictions and sentences. We affirm.
Both defendants were charged with two counts of armed robbery and one count of attempted murder and pled not guilty at arraignment. Defendant Muse subsequently filed a motion to quash based on the fact that he was a juvenile at the time of the offenses. On January 22, 1987, the trial court granted Muse's motion as to count two, the attempted murder, and denied it as to counts one and three, the armed robberies. After a jury trial, Dozier was found guilty of two counts of armed robbery in violation of La.R.S. 14:64 and one count of attempted second degree murder in violation of La.R.S. 14:27(14:30.1). Muse was found guilty of two counts of armed robbery. Both defendants were sentenced to 99 years at hard labor without benefit of parole, probation or suspension of sentence on each of the armed robbery counts. Dozier was sentenced to an additional 50 years at hard labor for attempted murder. All sentences were run concurrently as to each defendant.
Lorraine Gabriel testified at trial that two black males grabbed her purse in the Wal-Mart parking lot in New Orleans East on September 11, 1986 about 8:50 p.m. Alphonse Walker heard her scream and saw two males running to a truck. He followed to obtain the license plate number. Both witnesses saw the perpetrators jump into an orange or dark yellow truck and heard what they thought was a gunshot as the truck sped off.
Robin Brown testified that she was walking on Palm Street in the Carrollton area at approximately 10:30 p.m. that same evening when a black male grabbed her purse. They struggled and then separated when she saw him holding her purse and a gun. She turned, calling for help, and he shot her in the back. She positively identified Muse as her assailant at trial. Michael Jackson who witnessed the robbery and the shooting, also positively identified Muse, as did Officer Glen Banks, who was sitting in a patrol car at the nearby McDonald's parking lot. Hearing a shot, the officer saw Ms. Brown fall and the suspect running with the purse to a truck.
Tammy Johnson and Leslie Fouchea testified that they had been riding with the defendants along the Lakefront. They confirmed that all four went to Wal-Mart where the defendants left the truck. When they returned, Muse was holding a purse and Dozier had a gun. As they drove off, Dozier fired a shot. The girls asked to be taken home but Muse drove to the Carrollton area. They heard a gun shot after Muse left the truck. He came back with a gun and a purse. In the truck, Muse admitted shooting the victim. The defendants searched the purses and finally let the girls go home after threatening them to keep quiet. Five days later, the girls went to the police, made complete statements and identified the defendants.
On appeal defendants present two assignments of error, contending that:
(1) the trial court erred in denying their motion for mistrial, and
(2) their sentences are excessive.
The record reveals that just before trial the prosecution discovered that the victim Ms. Brown had participated in a photographic lineup but failed to identify the perpetrator. Because of Ms. Brown's trial testimony concerning the photographic lineup, defendants moved for a mistrial, claiming that this exculpatory material required disclosure to the accused during pretrial discovery. La.C.Cr.P. Arts. 718 and 729.2; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
The circumstances surrounding the presentation of the photographs to the victim Ms. Brown were not established and there was no clear showing of who presented the photographs to her. The victim's failure to identify the defendant from a photographic lineup was brought to the attention of the *933 jury. Under the circumstances, the trial court did not err in denying a mistrial. The evidence against the accused was overwhelming and the defendants were not prejudiced by the nondisclosure. State v. Cole, 530 So.2d 652 (La.App.4th Cir.1988). Even if the failure to timely disclose the information were error, it was harmless error. The defendant was not deprived of a fair trial by the State's late disclosure of exculpatory evidence. State v. Smith, 430 So.2d 31 (La.1983).
In support of their argument that their sentences are excessive, defendants point out that they received maximum sentences running concurrently although they were young first offenders. They also aver that the trial court relied on facts not proven, i.e. the defendants were on PCP during commission of the crimes. The judge remarked that he thought the defendants were using PCP when he sentenced another unrelated offender on the same day that he sentenced the defendants.
The sentencing transcript reveals that the trial judge referred to defendants' presentence investigation reports, noting that Muse had no prior convictions but had been arrested three times as a juvenile. The judge reviewed Dozier's prior juvenile and adult records, pointing out that the offenses involved crimes against persons and that Dozier had a history of violent behavior. The trial judge took into account the mitigating circumstances of defendants' youth, that Muse had no prior record of convictions and that Dozier did not actually shoot Ms. Brown. However, the judge reflected on Dozier's prior propensity for violent behavior and the fact that Muse shot Ms. Brown. Trial testimony also shows that Dozier fired at witnesses in the first robbery at Wal-Mart. The trial court stated that the record itself justified the sentence because the crime was an especially violent one where five people's lives were endangered and one person was shot.
The aggravating circumstances far outweigh the mitigating factors to justify the sentences imposed regardless of any use of PCP. The record reflects that the trial court adequately considered the sentencing guidelines set forth in La.C.Cr.P. Art. 894.1 in particularizing the sentences to the defendants. There is a factual basis for the sentences. State v. Soco, 441 So.2d 719 (La.1983); appeal after remand, 508 So.2d 915 (La.4th Cir.1987). We find no abuse of the trial court's sentencing discretion. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Caston, 477 So.2d 868 (La.App.4th Cir.1985).
For the foregoing reasons, defendants' convictions and sentences are affirmed.
AFFIRMED.
PLOTKIN, Judge, concurs with reasons.
Prior to trial, the State answered pre-trial discovery motions indicating that it had no Brady material. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under Brady, upon request, the State must produce evidence that is favorable to the defendant where it is material to guilt or punishment, including evidence which impeaches the testimony of where the reliability or credibility of that witness may be determinative of guilt or innocence. State v. Duckworth, 496 So.2d 624 (La. App. 1st Cir.1986).
At the hearing on the motion for a new trial, the parties stipulated that the ADA, Robert Mosely, learned on the morning of trial that photographs were exhibited to the victim-witness, Robin Brown. Furthermore, Ms. Brown failed to identify her perpetrator from the photo lineup. This information was not disclosed prior to trial, but was disclosed at trial when Ms. Brown testified.
The requirement of disclosure of favorable evidence to the accused prior to trial was clearly violated by the State. The Brady rule and the Louisiana Code of Criminal Procedure articles on discovery are meant to eliminate unwarranted prejudice, to avoid surprise evidence and to allow the defense adequate time for preparation. Brady, supra; La.C.Cr.P. arts. 716-729.6. Nondisclosure of information which may constitute Brady material invites delay and protracted litigation. Additionally, *934 it involves the risk of reversal of an otherwise valid conviction. State v. Roussel, 381 So.2d 796 (La.1980).
Conduct by the State which thwarts this discovery is deplorable. It is disturbing that the State indicates in brief that "Arguably, out of extreme abundance of caution, the prosecutor could have shared this information with the appellants." This characterization of the State's responsibility to reveal Brady material infers that this is discretionary. While Louisiana law does not provide unlimited discovery, the mandate to disclose Brady material is not optional.
In the case at bar, the failure of the State's witness to identify her perpetrator in a photo lineup was exculpatory information and should have been disclosed to the defense prior to trial. Yet, as the majority indicates in this case the error was harmless. The evidence against the defendant was overwhelming given the number of witnesses that identified both the defendants and the defendant Muse's family truck. Additionally, there was no prejudice to the defendant since the photo lineup and failure to identify the perpetrator was revealed to the jury at trial. However, prosecutors must not be allowed to arbitrarily apply their own standards to discovery rules that tend to erode the basis of the adversarial system.