JAMES F. MCKAY III CHIEF JUDGE
liThe defendant appeals the trial court’s rulings denying his motion for mistrial based on the - late disclosure of Brady [1] material and also asserting that he was not Mimndized[2] prior to -the taking of DNA samples. For the reasons that follow, we affirm- the defendant’s conviction and sentence.
STATEMENT OF CASE
On March 19, 2013, the defendant was charged by bill of information with one count of attempted second degree murder, in violation of La. R.S. 14:(27)30.1, and one count of attempted armed robbery while armed with a firearm, in violation of La. R.S. 14:(27)64.3. The defendant appeared for arraignment on March 22, 2013, and entered a plea of not guilty. On April 1, 2013, an omnibus motion for discovery; motion to preserve evidence; motion for suppression of statement, evidence and identifications; and motion for preliminary examination were filed. The hearing on the motions was continued multiple times. On May 16, 2014, the defendant obtained new counsel, On May 23, 2014, the defendant’s new counsel filed a second motion to suppress evidence, suppress statement, and suppress 12identification. The defendant also requested a preliminary examination. Additional motions for continuances were filed and granted. The trial court conducted a hearing on the motions on February 5, 2015. The trial court found probable cause and denied the defendant’s motion to suppress evidence and statement. The defendant was given until February 20, 2015, to file a motion to reconsider the trial court ruling on the motion to suppress the evidence. A pre-trial conference was set for February 20, 2015, and trial was set for April 28, 2015. The defendant was granted an extension of time.to file his brief, and the pre-trial conference was continued to March 27, 2015. The pre-trial conference *576 was continued once more and set for April 2, 2015. The defendant filed his motion to reconsider the trial court ruling denying his motion to suppress the evidence on April 6, 2015. After a review of the defendant’s motion to reconsider its ruling on the motion to suppress, the evidence on March 27, 2015, the trial court determined that the ruling from February 5, 2015, would stand. The defendant sought supervisory ’ review in this Court, which was denied on August 4, 2015. State v. Cooper, 2015-0570 (La. App. 4 Cir. 8/4/15) (unpub.). The Louisiana Supreme Court denied writs on October 30, 2015. State v. Cooper, 2015-1637 (La. 10/30/15), 180 So.3d 299.
On March 26, 2016, a trial by jury ¡commenced. At the conclusion of the four-day trial, the jury returned guilty verdicts on all charges. On April 19, 2016, the defense filed motions for new trial, for arrest of judgment, and for mistrial, which the trial court denied. On April 20, 2016, the trial court imposed a sentence of twenty-five years without benefit of parole, probation, or suspension of sentence for the attempted armed robbery conviction and a concurrent forty-year sentence, without benefits, for the attempted second degree murder conviction. That same |3day, the defense filed an oral motion to reconsider the sentence, which was denied. On April 27, 2016, the defendant filed a motion for appeal which was granted.
STATEMENT OF FACT
On October 19, 2012, Mark Wright was shot during an attempted armed robbery in the parking lot of his-hotel, the Family Inn, at 6303 Chef Menteur in New Orleans, Louisiana. Mr. Wright had just opened the door to his car when a man pointed a gun at him and' demanded money. Mr. Wright was holding a backpack with a gun inside. As the robber grabbed the backpack, Mr. Wright managed to hold on to his gun. The robber shot Mr. Wright twice, once in the arm and once, in the side. Mr. Wright shot back twice and believed he injured the defendant.
Mr. Wright exited the truck, doubled over, and moved towards the rear of his vehicle, when he saw the robber sitting behind the -vehicle with his legs stretched out in front of him, Mr. Wright described the robber as a black male, thin, with matted down hair, Mr. Wright turned around to avoid the ’robber and made his way to the front of his vehicle, Mr. Wright fired two more shots in the direction of the l’obber.
After firing the two shots, Mr. Wright was shot again, this time in his back, leaving him paralyzed. The New Orleans Polic Department (“NOPD”)and Emergency Medical-Services (“EMS”) arrived, on the scene and- after stabilizing Mr. Wright, transported him to the hospital.
As part of his investigation, the lead detective on the case, Sergeant Gregory Powell (“Sgt. Powell”), advised dispatch to notify him if anyone was admitted with a gunshot wound to. any of the area hospitals. He was soon notified by Tulane Medical Center that a gunshot victim, Iren Cooper, had just arrived at the hospital. 14A crime scene unit was dispatched to the hospital and performed a gunshot residue test. At the motion hearing, Sgt. Powéll testified that Mr. Cooper consented to the test; however, at trial, Sgt. Powell- acknowledged that the crime scene unit had arrived at the hospital, performed the test, and left before he arrived. No testimony was provided as to the voluntariness of the consent by the officer who actually performed the gunshot residue test.
The crime lab photographed the scene at the Family Inn, ,and a hat with the STD trash company emblem was retrieved. Based upon 911 calls, two detectives followed the trail the robber allegedly took *577 when he fled. The detectives discovered blood drops eight houses down the street, which were retrieved by the crime lab.
Sgt. Powell interviewed the defendant at the hospital. Sgt. Powell did not consider the defendant a suspect in Mr. Wright’s case in particular. He testified that anyone who went to a hospital that night with a gunshot wound would be investigated as a possible suspect, and his treatment of the defendant was the same as- his treatment of any other gunshot victim reporting to a hospital that night; A buccal swab was obtained from the defendant, and the defendant’s hands were tested for gunshot residue.
Mr. Wright was shown a photo lineup, which included the defendant at University hospital. He chose another individual from the lineup, stating the photo selected looked the most like the perpetrator.
The buccal swab and the blood samples recovered near the scene were sent -to the State Police Crime Lab for testing, DNA analyst Julia Nailor-Kirk testified that the defendant could not be excluded as the donor of the DNA profile obtained from the blood. The hat recovered near the back of Mr. Wright’s vehicle was also I ¿sent' to be tested for DNA. Ms, Nailor-Kirk testified that the defendant could also not be excluded as the donor of the DNA profile obtained from inside the- hat. She also testified that the statistical probability of finding an unrelated random individual among the black population with the same profile was one in 23 quintillion for the blood and one in 561 million for the hat.
ERRORS PATENT
A review of the record for errors patent reveals none.
DISCUSSION
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant contends the trial court erred in denying his motion for mistrial for failure to timely disclose exculpatory evidence. The defendant asserts the State failed to inform him that the victim identified a different individual as the robber in a photographic lineup until the day before trial.
Due process requires that evidence that is both favorable to the accused and material either to guilt or' punishment be disclosed to the defense. See. Brady v. Maryland, Supra.
Louisiana Code of Criminal Procedure article 729.5 (A) sets forth the applicable sanctions for a failure -to comply with discovery in a criminal proceeding as follows:
Art. 729.5. Failure to comply; sanctions
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order, such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
| (¡Generally, “Louisiana’s criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to respond to the State’s case, and to allow a proper assessment of the strength of the State’s case.” State v. Girard, 2012-0790, p. 4 (La. App. 4 Cir. 3/6/13), 110 So.3d 687, 690.
In State v. Coleman, 2014-0402 (La. 2/26/16), 188 So.3d 174, the Louisiana Supreme Court addressed.the late disclosure of evidence favorable to the defendant and stated:
*578 The suppression of evidence favorable to the accused violates due process where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution; Brady v. Maryland, 373 U.S. 83, 88, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Favorable evidence includes both exculpatory evidence and impeachment evidence. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); State v. Knapper, 579 So.2d 956, 959 (La.1991). Moreover, late disclosure of favorable evidence may require reversal if the timing significantly impacted the defendant’s opportunity to effectively present the material. State v. Kemp, [20]00-2228, (La.10/15/02), 828 So.2d 540, 545-46. Still, Brady and the decisions that follow do not establish a general rule of discoverability and the state’s failure to disclose or late disclosure does not automatically mandate a reversal. Rather, the defendant must first show he suffered prejudice as a result. La. C.Cr. P. art. 921; see also United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976); State v. Willie, 410 So.2d 1019, 1030 (La.1982).
Id., pp. 36-37,188 So.3d at 203.
As this Court stated in State v. Hatfield, 2013-0813, pp. 39-40 (La. App. 4 Cir. 7/2/14), 155 So.3d 572, 597, “[i]t is within the trial court’s discretion under La.C.Cr.P. art. 729.5 to exclude evidence or enter any appropriate order to remedy a party’s violation of a discovery right.” Id. citing State v. Bourque, 96-0842, p. 15 (La. 7/1/97), 699 So.2d 1, 11.
[7In the case sub judice, the defendant contends he was prejudiced by the State’s disclosure the day before trial that the victim selected a different individual when shown a six-person photographic lineup. The defendant contends he was unable to effectively present the material at trial and that the fundamental fairness of his trial was compromised. In State v. Smith, 430 So.2d 31 (La. 1983), the defendant made a similar argument regarding the untimely disclosure by the State of a police offense report, which contained a description which did not match the defendant. The Court stated:
As stated previously, we find that the offense report which contained a misde-scription of the defendant was exculpatory and material, for it concerned the reliability of the victim, a crucial state witness. We assume, for the purposes of argument, that the police log was also Brady material.
The case at bar, however, is distinguishable from Brady, for we do not have a situation where withheld information was discovered only after conviction, but- one where the exculpatory evidence became available to the defense during trial. See United States v. Kaplan, 554 F.2d 577 (3rd Cir.1977). Not all cases involving late disclosure of exculpatory evidence result in reversible error. We must determine whether the late disclosure so prejudiced the defendant that he was denied his constitutional right to a fair trial. State v. Arnaud, 412 So.2d 1013 (La.1982); State v. Roussel, 381 So.2d 796 (La.1980); State v. Manning, 380 So.2d 46 (La.1980).
We find, in this case, that the state’s untimely disclosure of the offense report and the police log did not so prejudice the defendant as to deny him a fair trial. Both the offense report and the police log were submitted into evidence and brought to the attention of the jury. Officers Warren and Brown, who wrote the description in their respective reports, were fully cross-examined by defense counsel as to these reports. Moreover, the victim was called by the state *579 as its last rebuttal witness. She reasserted that she had given a description to the officers which matched the defendant. However, rather than cross-examining the victim and using the police log and offense report, which were already in evidence, to question the certainty of her identification, defense counsel chose not to ask her any questions.
We do not approve of untimely disclosure of exculpatory information by the state. Late disclosure invites trial delay and risks reversal. State v. Roussel, 381 So.2d 796 (La.1980). Nevertheless, we conclude that the trial court did not abuse its discretion in denying the defendant’s motion for mistrial and the defendant is not entitled to a 18new trial on this issue, for the defendant was not deprived of a fair trial by the state’s late disclosure of exculpatory evidence.
Id. at 42 (Footnote omitted).
In State v. Dozier, 553 So.2d 931, 932-33 (La. App. 4th Cir. 1989), the record revealed the prosecution discovered before trial that the victim had participated in a photographic lineup but failed to identify the perpetrator. The defendant was not notified prior to trial. The victim’s trial testimony referred to the photographic lineup. The defendants moved for a mistrial, claiming that this was exculpatory material and required disclosure to the accused during pretrial discovery. This Court found:
The victim’s failure to identify the defendant from a photographic lineup was brought to the attention of the jury. Under the circumstances, the trial court did not err in denying a mistrial. The evidence against the accused was overwhelming and the defendants were not prejudiced by the nondisclosure. Even if the failure to timely disclose the information were error, it was harmless error. The defendant was not deprived of a fair trial by the State’s late disclosure of exculpatory evidence.
Dozier, 553 So.2d at, 932-33.
As in Smith and Dozier, the record and evidence in the case sub judice reflect the jury was aware the victim did not identify the photograph of the defendant as the perpetrator in the photographic lineup. The jury was also aware the victim chose the photograph of another individual as looking “more similar” to the person who shot him.
The defendant has not shown he was prejudiced or denied a fair trial by the untimely notification that the victim picked another individual from the photographic lineup. The trial court did not err in denying the defendant’s motion for a mistrial. This assignment of error has no merit.
^ASSIGNMENT OF ERROR NUMBER 2
The defendant contends the trial court erred in finding the defendant’s consent to the buccal swab was valid because the defendant had not been given his rights according to Miranda prior to giving consent.
At the outset, the Louisiana Supreme Court in State v. Palmer, 2009-0044 (La. 7/1/09), 14 So.3d 304, stated, “even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual’s identification; and request consent to search....” Id. at p. 10, 14 So.3d at 310. (quoting Muehler v. Mena, 544 U.S. 93, 101, 125 S.Ct. 1465, 1471, 161 L.Ed.2d 299 (2005) quoting Florida v. Bostick, 501 U.S. 429, 434-35, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991)). The Court in Palmer also made it clear that a defendant’s consent to a search is a non-communicative and non-testimonial statement falling completely outside of the *580 Fifth Amendment and therefore outside of the Miranda protections. Id.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution of 1974 prohibit unreasonable searches and seizures. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Lain, 347 So.2d 167 (La. 1977). The State bears the burden of proving that one of these exceptions applies. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Tatum, 466 So.2d 29 (La. 1985).
It is well-settled that an appellate court should review a trial court’s ruling under a deferential standard with regard to factual determinations, while legal findings are subject to a de novo standard of review. State v. Hunt, 2009-1589, p. 6 (La. 12/1/09), 25 So.3d 746, 751 ( citing State v. Hampton, 98-0331, p.18 (La. 4/23/99), 750 So.2d 867, 884). Moreover, a trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion. State v. Wells, 2008-2262, p.5 (La. 7/6/10), 45 So.3d 577, 581. As noted by the Court in State v. Thompson, 2011-0915, pp. 13-14 (La. 5/8/12), 93 So.3d 553, 563:
The analysis may be further broken down into the component parts of the trial court decision. “When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings.” Wells, 2008-2262, p. 4; 45 So.3d at 580; State v. Hunt, 2009-1589, p. 6 (La. 12/1/09); 25 So.3d 746, 751. Legal findings or conclusions of the trial court are reviewed de novo. Id.; State ex rel. Thibodeaux v. State, 2001-2510, p. 1 (La. 3/8/02); 811 So.2d 875.
The Louisiana Supreme Court in State v. Lee, 2005-2098 (La. 01/16/08), 976 So.2d 109, found that the use of a buccal swab to obtain a DNA sample from an individual constituted a search. The Court in Lee stated:
A warrantless search is per se unreasonable unless it falls within certain limited, well-delineated exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Hernandez, 410 So.2d 1381 (La.1982); State v. Zito, 406 So.2d 167 (La.1981). Warrants therefore are generally required to search an individual’s home or person, “unless” the exigencies of the situation’ make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.” State v. White, 399 So.2d 172, 175 (La.1981). The trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Vessell, 450 So.2d 938, 943 (La.1984).
Id. at pp. 14-15, 976 So.2d at 122. (emphasis in original).
In Lee, the State argued that the defendant consented to produce DNA samples through the use of a buccal swabbing of both cheeks. Therefore, the State luargued the defendant’s consent obviated the necessity for a search warrant. In the case sub judice, the state argues that Sgt. Powell obtained the consent of defendant prior to utilizing the buccal swab or the GSR test. As stated in Lee:
*581 For this argument to be 'successful, the State will have to hurdle the burden of showing more than acquiescence to a claim of lawful authority. As stated in Bumper v. North Carolina:
When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.
Bumper v. North Carolina, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).
Id. at p. 17, 976 So.2d at 124.
In Lee, law enforcement officers went to the defendant’s home, advised him they had a court order compelling him to submit to swabbing to obtain his DNA, and showed him a subpoena duces tecum. The Court in Lee found that under these facts, it was clear that the defendant simply acquiesced to the lawful authority of law enforcement; and it could not be said that such acquiescence constituted free and voluntary consent. Therefore, the Court found no merit to the State’s contention that the defendant consented to the buccal swab. Id. at p. 18, 976 So.2d at 124.
In Lee, the Louisiana Supreme Court analyzed whether the , DNA evidence, which had been obtained without a valid search warrant, was nevertheless admissible under the inevitable discovery rule. The Court found that the defendant’s DNA would have been inevitably collected and matched; thus, the trial |12court properly denied the defendant’s motion to suppress. Lee at p. 31, 976 So.2d at 131-32.
In the case sub judice, the defendant contends that Sgt. Powell intentionally misled the defendant by not informing him that he was a suspect, or that he was free to refuse to give the DNA sample. However, Sgt. Powell stated at the hearing on the motions that the defendant was not in custody at the time the buccal swab was obtained and the GSR test was performed. Sgt. Powell stated that the defendant freely and voluntarily consented to the buccal swab and GSR test. Sgt. Powell stated that he was treating the defendant “[a]s the victim of an attempted robbery at the intersection or near the intersection of Elysian Field and Derbigny.” Sergeant Powell did not inform the defendant that he was investigating a separate shooting or that the defendant was a potential suspect. Sergeant Powell stated:
I went to the hospital—or anyone that would have been shot at that time in any parish or connecting parishes that they may have been a suspect. But that doesn’t mean that everybody would have been the perpetrator. I have to dispel if they were a suspect or not.’ And the only way I can do that, I have to at least interview him to see if it was a legitimate different robbery and shooting. It’s not the fact that we only get one shooting or one robbery at a time in New Orleans, we may get six or seven at a time. So I have to at least talk to them to find out if it happened at the scene or not. So when he said he was a victim of a robbery, it’s not uncommon that I can have a robbery and a shooting in New Orleans East and a robbery and a shooting uptown and a robbery and a shooting across the river....
*582 And that’s the way I treated him, as a victim.
Sgt. Powell’s testimony at trial was substantially the same as the testimony provided the hearing on the motions.
A review of the record reflects that the trial court did not err in denying the defendant’s motion to suppress the evidence. This claim has no merit.
CONCLUSION
| MFor the above stated reasons, we affirm the defendant’s convictions and sentences.
AFFIRMED
JENKINS, J., CONCURS IN THE RESULT

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).