UNITED STATES of America,
Plaintiff-Appellee,

v.

Ollie H. MILLER, Defendant-Appellant.

No. 74–3019.

United States Court of Appeals,
Ninth Circuit.

Jan. 26, 1976.

---

**1126**

Jerald W. Newton (argued), Beverly Hills, Cal., for defendant-appellant.

Leonard Sharenow, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

OPINION

Before HUFSTEDLER, CHOY and WALLACE, Circuit Judges.

CHOY, Circuit Judge:

Miller appeals from a conviction on nine counts for preparing false income tax returns for his clients and for aiding

in the presentation of false documents to the Internal Revenue Service, in violation of 26 U.S.C. § 7206(2). We affirm.

## Facts

In 1973 appellant, an accountant, was engaged in the business of preparing income tax returns. Miller generally would meet alone with each client and ask for or receive information from the client on expenses which might be the basis for deductions. In due course Miller would dictate certain figures and information to his secretary to be written or typed on the client's tax return.

The information given by the client to Miller and the information prepared by Miller for use on the return, however, were not always the same. At the trial, each of five of appellant's former clients testified that the tax return prepared by Miller contained deductions that were false and that at no time had the client furnished false deduction information. Each of these clients also stated that, after receiving an IRS audit letter, he went to Miller who then had certain documents prepared. These documents, which purported to be letters from various companies, but which undisputedly were false, referred to certain finance expenses, charitable contributions, or other financial transactions entered into by the client.

Appellant's primary defense strategy at trial was to demonstrate by circumstantial evidence that a part-time employee, Mills, and not Miller, was responsible for the preparation of the five false returns and supporting documents upon which the indictment was based. Mills was responsible for the preparation of about 25 per cent of the returns typed by one of Miller's secretaries. At trial Mills' character was discredited by a defense witness, Willie Mae Waddell, who testified that Mills prepared her income tax return which contained false deduction information and that Mills then supplied false documentary proof to back up the claimed deductions when the IRS challenged them.

Waddell's testimony, revealing as it was about Mills' *modus operandi,* did not implicate Mills in the preparation of any of the five false returns which were the subject of Miller's indictment. In fact, no evidence was produced at trial which tended to show that Mills rather than Miller was responsible for the preparation of the five returns and their supporting documents.

### Suppression of Exculpatory Evidence

Appellant challenges his conviction on several grounds, but only one merits discussion. According to Miller, the Government ran afoul of the *Brady* rule by suppressing until just before the close of Miller's case the fact that Mills three weeks earlier had admitted to Government agents that he and not Miller had prepared the Waddell return and another false return (hereinafter the "Lopez return"). Neither the Waddell nor the Lopez return, however, formed the basis for any counts in the indictment for which Miller was on trial.

It is a well settled rule that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Valdivia,* 492 F.2d 199, 205 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

Several times before and during the trial Miller specifically requested all *Brady* material in the possession of the Government or its agents, and the only significant *Brady* question raised here is whether the evidence suppressed was *material* to Miller's guilt.

To determine the materiality of the evidence in this case, it is necessary to review the circumstances surrounding its disclosure at trial. Miller had originally been indicted on 23 counts, but just prior to June 18, 1974, the original trial date, two witnesses—Waddell and Lopez—

each repudiated a prior sworn affidavit that Miller had prepared a false income tax return and false supporting documents. While absolving Miller, each implicated Mills in the preparation of the false materials. Because both Waddell and Lopez told the Assistant United States Attorney that they had already given their new statement to Miller's counsel, the Government never bothered to relay the new information to Miller. No claim is made by Miller that this evidence was suppressed by the Government; and, in fact, Miller's counsel knew about the new Waddell and Lopez testimony even before the Government learned of it.

With Waddell's and Lopez's new testimony in hand, the Government dismissed all counts of the original indictment which had been based on allegations contained in the witnesses' prior affidavits. The Government then confronted Mills with Waddell's and Lopez's statement, and he admitted that Waddell and Lopez were telling the truth.

The Government did not inform Miller's counsel of the Mills confession until towards the close of the presentation of Miller's defense at trial. At that time the court gave Miller's counsel an opportunity to confer not only with his client, but also with Mills and informed counsel that he would grant a continuance if counsel deemed it necessary. After conferring with his client, Miller's counsel elected not to place Mills on the stand and did not move for a continuance.

 We agree with the trial court that Mills' statement was in part exculpatory material and should have been turned over to the defense. The fact that the Government concluded in good faith that the evidence would not be very helpful to Miller does not excuse its failure to disclose the statement. The prosecutor is not merely an advocate for a party; he is also an administrator of justice.[1] Considering the vast investigatory resources and powers at the Government's disposal, an elemental sense of fair play demands disclosure of evidence that in *any* way may be exculpatory.[2] If the Government, upon request by the accused, has serious doubts about the usefulness of the evidence to the defense, the Government should resolve all doubts in favor of full disclosure. Such a rule appears particularly appropriate since disclosure could cause no harm to the Government while suppression could very well prejudice the defendant.

 The Government's misconduct in failing to promptly disclose exculpatory evidence, however, does not automatically warrant reversal of a defendant's conviction. *United States v. Diaz-Rodriquez,* 478 F.2d 1005, 1008 (9th Cir.), *cert. dismissed,* 412 U.S. 964, 93 S.Ct. 3024, 37 L.Ed.2d 1013 (1973). For two separate reasons, *Brady* does not require reversal in this case. First, unlike *Brady,* there was no *complete* suppression of the exculpatory evidence. Appellant learned of the Mills statement *at trial,* albeit not until towards the close of his defense. Thus, our inquiry on appeal is not whether the evidence, had it been disclosed, might reasonably have affected the jury's judgment on some material point. Rather, it is whether the *lateness* of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial. *United States v. Hibler,* 463 F.2d 455, 459 (9th Cir. 1972). The trial judge offered Miller a continuance and to bring Mills in for an interview by Miller's counsel, but Miller deemed both not necessary. Since Mills was known to appellant at all times and appellant was aware three weeks before trial of Waddell's and Lopez's statement implicating Mills, we do not see how the late disclosure prejudiced Miller. This is not a case where the evidence, if promptly disclosed, would have opened the door for the defense to new witnesses or doc-

---

1. *See* ABA Standards, The Prosecution Function § 1.1(b), (c) (1971).

2. *See* ABA Standards, Discovery and Procedure Before Trial § 2.1(c) (1970).

uments requiring time to be marshalled and presented. *See United States v. Baxter,* 492 F.2d 150, 174 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

Second, the evidence would not have been favorable to Miller. Mills' statement itself would have been of little or no value at trial because the jury already knew from Waddell's undisputed testimony that Mills and not Miller had prepared her false return. The statement was merely cumulative evidence. Further, the full statement given by Mills to the Government, if presented at trial, would have harmed Miller more than helped him. In addition to admitting responsibility for the Waddell and Lopez returns, Mills' statement implicated Miller in the preparation of other false returns and denied that he (Mills) had anything to do with the preparation of the five tax returns which constituted the heart of the Government's case against Miller. The trial judge recognized the dubious value of Mills' statements,[3] and Miller's failure to call Mills to the stand and use the statement indicates that he also viewed it as a two-edged sword. Accordingly, we find that the suppressed evidence would not have been of material aid to Miller at trial. *See United States v. Valdivia, supra,* at 205–06; *United States v. Baxter, supra,* at 174–75.

### Other Claims of Error

■ Miller's other claims of error are without merit. Contrary to his argument, Miller is not entitled to an open inspection of the government files. *Baxter, supra,* at 173.

■ The district court properly instructed the jury that it could convict the defendant on the uncorroborated testimony of an accomplice, if believed,

*United States v. Castro,* 476 F.2d 750 (9th Cir. 1973), and did not err in failing to instruct the jury that they were not required to accept the uncontradicted testimony of witnesses.

■ Viewing the evidence in a light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find the evidence against Miller to be substantial, if not overwhelming. Affirmed.

HUFSTEDLER, Circuit Judge (dissenting):

Reversal is required in this case because the nondisclosure of Mills' confession was *Brady* error, and it was not harmless beyond a reasonable doubt. Although the reasoning of the majority is not crystalline, I interpret the opinion as deciding that a *Brady* error occurred, but that the error was not prejudicial. I cannot reconcile the reasoning with *Brady* itself nor with the authority that constitutional error requires reversal unless the error was harmless beyond a reasonable doubt.

The threshold inquiry is whether Mills' confession was "material either to guilt or to punishment." (*Brady v. Maryland* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.) Evidence is "material" in the *Brady* sense if it may have been useful to Miller on the guilt phase of his trial had it been timely disclosed. The standard of materiality is plausible materiality, not palpable materiality. (The *Brady* phrase is "would tend to exculpate." 373 U.S. at 88, 83 S.Ct. 1194.) Suppression of evidence that goes only to the credibility of a witness is material within the meaning of *Brady* when the credibility of a witness might affect the outcome of a case. (*Giglio v. United States* (1972) 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104; *United States v. Hibler*

---

3. At trial the district court told Miller's counsel:

> All right. I consider this material Brady material. It has been given to you. Do you desire any—I don't know if it is usable, because it does inculpate your client. I will give you a continuance if you desire.
>
> R.T. 393

* * * * * *

> Well, again, the trial procedures you desire to follow are yours. I don't see how you could really use Mills, but I will leave that up to you. If you want him brought in for an interview, I will bring him in, but I want him in now.
>
> R.T. 394.

(9th Cir. 1972) 463 F.2d 455; *see Napue v. Illinois* (1959) 360 U.S. 264, 269–70, 79 S.Ct. 1173, 3 L.Ed.2d 1217.)

Mills' confession was "plausibly material" because it tended to support Miller's central defense theory that Mills, not Miller, prepared the false tax returns specified in the indictment. The evidence did not become immaterial because defense counsel did not use it after the prosecution tardily disclosed it. The evidence was not revealed until the Government's case-in-chief was closed and the defense case was almost over. Defense counsel could not then turn back the clock, plan and execute his cross-examination of the Government's witnesses and lay the path for the defense with Mills' confession in hand. A continuance at that juncture would have provided him with little more than an opportunity to reflect upon the use he could have made of the evidence if he had known about it in time.

The next question is whether the *Brady* error requires reversal. Special rules govern reversals for the Government's failure to disclose evidence favorable to a defendant. If the prosecutor intentionally withholds *Brady* material to gain an advantage over the accused, the nondisclosure is in bad faith, and automatic reversal follows.[1] (*E. g., United States v. Keogh* (2d Cir. 1968) 391 F.2d 138, 146–47; *see United States v. Gerard* (9th Cir. 1974) 491 F.2d 1300, 1302–1303). The prosecutor in this case deliberately withheld the Mills' confession until the trial was almost over, but nothing in the record suggests that he acted in bad faith. Rather, he mistakenly arrogated to himself a determination about the utility of the confession to the defense. Defense counsel, not the prosecutor, has the responsibility to decide whether plausibly material evidence will be useful. (*See Brady v. Maryland, supra,* 373 U.S. at 88, 83 S.Ct. 1194; *Levin v. Clark*

(1967) 133 U.S.App.D.C. 6, 408 F.2d 1209, 1212.) The failure of the prosecutor to reveal the Mills' confession was akin to negligence. Negligent nondisclosure is a violation of *Brady.* (*See Giglio v. United States, supra,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104; *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. 1194; *Levin v. Katzenbach* (1966) 124 U.S.App.D.C. 158, 363 F.2d 287, 290; *see also, e. g., United States v. Rosner* (2d Cir. 1975) 516 F.2d 269, 272; *United States v. Gerard, supra,* 491 F.2d at 1302). "[N]egligent nondisclosure is no less damaging than that which is a product of guile." (*Levin v. Katzenbach, supra,* 363 F.2d at 290.) Nonetheless, application of the automatic reversal rule to cases involving negligent *Brady* violations would probably be too severe. (*See United States v. Keogh, supra,* 391 F.2d at 147–48.)

A *Brady* violation involves a deprivation of due process. Thus, except in those cases where special circumstances necessitate application of the automatic reversal rules, we should apply the usual constitutional error rule that a violation requires reversal unless the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.) The burden rests upon the Government to establish that the error was harmless under *Chapman,* and the Government has not carried that burden. Although the evidence was sufficient to sustain the conviction on appeal, absent *Brady* error, the evidence of guilt was by no means overwhelming.

We should not be hesitant in rigorously applying *Brady* and enforcing that rule even though reversals of criminal convictions may thereby result. The *Brady* rule does not result in the suppression of relevant evidence, but in its disclosure, thereby shoring up the integrity of the fact-finding process. Signifi-

---

1. The Supreme Court has indicated that a prosecutor is responsible for all information available to a member of his staff. (*Giglio v. United States, supra,* 405 U.S. at 154, 92 S.Ct. 763; *cf. Ingram v. Payton* (4th Cir. 1966) 367

F.2d 933 (prosecution liable for negligent misidentification of chief prosecution witness); *Barbee v. Warden* (4th Cir. 1964) 331 F.2d 842 (prosecution liable for police nondisclosure).)

cantly, the considered judgment of contemporary scholarship stands firmly behind fuller disclosure in criminal proceedings. (*E. g.*, Proposed Amendment to Rule 16 of the Federal Rules of Criminal Procedure and Advisory Committee Note thereto, 62 F.R.D. 271, 304–17.) Further, the *Brady* rule serves the inestimably important function of rendering criminal proceedings more just; the rule works no undue hardship on the prosecution, but merely requires the prosecution to disclose plausibly material evidence favorable to an accused, and to resolve any doubt in favor of disclosure. "The [prosecution's] obligation is not to convict, but to see that, so far as possible, truth emerges . . . . No respectable interest of the [prosecution] is served by its concealment of information which is material, generously conceived, to the case, including all possible defenses." (*Giles v. Maryland* (1967) 386 U.S. 66, 98, 87 S.Ct. 793, 809, 17 L.Ed.2d 737 (Fortas, J., concurring).)

Application of the *Chapman* rule forbids our throwing any burden upon Miller to show how nondisclosure prejudiced him. Accordingly, the majority's first-stated reason for nonreversal is irrelevant.

The second basis for the majority's conclusion that reversal is not required is that the undisclosed evidence was not material enough to warrant a new trial. The majority applies a test that governs post-trial motions for a new trial made before the district court. That is the wrong test. This is not a case like *United States v. Diaz-Rodriquez* (9th Cir. 1973) 478 F.2d 1005 in which *Brady* material was discovered after trial, upon the basis of which the defendant made a motion for a new trial before the district court. In that situation, absent governmental bad faith, the district court is not justified in granting a new trial unless it concludes that the newly discovered evidence " 'could . . . in any reasonable likelihood have affected the judgment of the jury . . .' " (*Giglio v. United States, supra,* 405 U.S. at 154, 92 S.Ct. at 766, *quoting Napue v. Illinois,*

*supra,* 360 U.S. at 271, 79 S.Ct. 1173; *United States v. DeVoe* (5th Cir. 1974) 493 F.2d 776.)

To be sure, the application of one standard of "materiality" of undisclosed evidence when the issue is presented to us on direct appeal and of a different standard of "materiality" of the same evidence when the issue is presented on a post-trial motion to a district court may seem anomalous because the end product in both situations may be a new trial. To the extent that there is any anomaly, however, it is one to which we are long accustomed, for example, the erroneous exclusion of evidence may often be a ground for reversal on direct appeal, whereas the same evidence, if discovered after trial, would not be a sufficient ground for a new trial motion before the district court. Moreover, the difference in rules is also the result of the expressed concern in *Brady* and *Giglio* that *Brady* error should not "automatically require a new trial whenever 'a combing of the prosecutor's files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .' " (*Giglio v. United States, supra,* 405 U.S. at 154, 92 S.Ct. at 766, *quoting United States v. Keogh, supra,* 391 F.2d at 148.)

Finally, *United States v. Valdivia* (9th Cir. 1973) 492 F.2d 199, upon which the majority opinion relies, does not support its conclusion. The evidence in that case was not withheld, and it was not material in the *Brady* sense. The prosecutor's office never possessed the evidence, which was a statement by one Silva to a customs agent that he had delivered narcotics to the defendant's cousin. The customs agent told the defendant about Silva's statement shortly before the end of the defendant's trial. The agent never told the prosecutor's office about it, and nothing in the recitation of the facts suggests that the customs agent had any duty to disclose the statement to anyone. He simply volunteered the information to the defendant. Moreover, we rejected the argument that the Silva statement would have been useful for impeachment

purposes; it had no substantive significance.

I agree with the majority that the other claimed errors are not meritorious, but I would reverse and remand for the *Brady* error. .