UNITED STATES of America, Plaintiff-Appellee,

v.

Everett Alan PALMER, Defendant-Appellant.

No. 75–3834.

United States Court of Appeals, Ninth Circuit.

June 10, 1976.

Irwin Schwartz, Seattle, Wash., for defendant-appellant.

Stan Pitkin, U. S. Atty., Seattle, Wash., for plaintiff-appellee.

OPINION

Before WRIGHT and CHOY, Circuit Judges, and WHELAN,* District Judge.

* Honorable Francis C. Whelan, United States District Judge for the Central District of California, sitting by designation.

CHOY, Circuit Judge:

In the course of an armed robbery of a Seattle bank, surveillance photographs were taken, and three tellers, standing a few feet away from the robber, obtained complete and accurate views of him and the revolver which he carried. Three days later, they identified him positively from a photograph. Nine days after the robbery, Palmer was stopped for a traffic violation in Utah, his name was checked with the National Crime Information Center and as a result he was arrested for the Seattle bank robbery.

On appeal, Palmer's counsel raises four objections: (1) the Government ran afoul of the *Brady* rule by suppressing exculpatory evidence; (2) admission into evidence of defendant's personal property taken from his attorney by subpoena duces tecum, violated defendant's fourth and fifth amendment rights; (3) cross-examination of Palmer went beyond the scope of direct examination in violation of the fifth amendment; and (4) Palmer's arrest was not based on probable cause. We are not persuaded by any of these contentions and affirm the conviction.

### Suppression of Exculpatory Evidence

Palmer contends that the Government's failure to disclose supposedly exculpatory evidence before the close of its case violated due process. The general rule regarding the suppression of exculpatory evidence is found in *Brady v. Maryland,* wherein the Supreme Court stated:

> [S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *United States v. Miller,* 529 F.2d 1125, 1127 (9th Cir. 1976).

Before trial the defense requested the names and statements of all persons who saw the robber. That request was denied. At the close of the Government's case, six statements given by persons in the vicinity of the robbery were provided to the court and the defense on the motion of defense counsel. The court determined that four of the statements did not contain any material evidence whatsoever, and the other two were "damaging to the defendant." The latter statements (exhibits 2 and 3) are the basis for appellant's contention that the *Brady* rule was violated.

Exhibit 2 is the statement of a Ms. Sylte who saw a man fitting the same general description as the robber near the bank about the time of the robbery. She saw that man run to a parked, medium-sized, light blue sedan with a dark blue top, and drive away. She stated that she did not think she could identify the man she saw as she was never close to him.

Exhibit 3 was the statement of Mrs. Norman, a customer at the bank on the day of the robbery. She said she saw a man fitting the general description of the robber wearing a light tan zipper jacket and dark pants. Mrs. Norman stated that she would not recognize the man because she saw him only once, from the rear.

The description of the car in exhibit 2 was not entirely compatible with that of the car driven by Palmer at the time of arrest. Exhibit 3 described an individual wearing a zipper jacket while the tellers described a button-down jacket. A jacket found in the defendant's car at the time of arrest, matching the description of the jacket worn by the robber in all other respects, was a button-down jacket. Appellant contends that these statements were exculpatory because they contradicted the eyewitness testimony of those who identified Palmer as the robber, and the Government's failure to disclose these statements before the close of its case thwarted the defense. We disagree.

First of all, unlike *Brady,* Palmer learned of these statements at trial; they were not completely suppressed. *Miller, supra* at 1127. When the statements were received by the defense, it had not yet begun its case. No attempt was made by the defense to put these witnesses on the stand. Nor was there a request for a con-

tinuance in order to investigate any new line of defense suggested by the statements. Palmer was not prejudiced by the disclosure of these statements at the close of the Government's case. *Miller, supra* at 1128–29.

■ Second, and more importantly, the statements were not *Brady* material because they were not exculpatory. They did not contradict the eyewitness identification of Palmer by the three bank tellers. Since Mrs. Norman could not identify the individual she saw, and in any event that individual may not have been the robber, her description of an individual with a zipper jacket was not exculpatory. There is no evidence to believe that the individual Ms. Sylte saw was in fact the robber although her description of him matches that of Palmer. Her description of the car into which that individual entered is therefore not material. Moreover, even if we were to assume that Ms. Sylte had seen the bank robber and his car, the fact that her description of the car did not match entirely the one driven by Palmer nine days later in Utah is not exculpatory.

■ We cannot say that the Government "failed to disclose evidence which, in the context of this particular case, might have led the jury to entertain a reasonable doubt about [Palmer's] guilt." *United States v. Hibler*, 463 F.2d 455, 460 (9th Cir. 1972); *Fields v. Alaska*, 524 F.2d 259, 260–61 (9th Cir. 1975). The Government's failure to disclose exhibits 2 and 3 until the close of its case did not violate *Brady*.

### The Subpoena Duces Tecum

When Palmer was arrested, a search of his car revealed nearly $1,200 worth of personal effects. The car and its contents were subsequently impounded. Some three weeks later, at Palmer's direction, a third party picked up the car and turned the contents over to a Mr. Anderson, a Utah attorney. Anderson was to ship Palmer's effects to Washington.

Anderson was later served with a subpoena duces tecum. He appeared at trial and provided three items from the contents of the car which the Government had requested—two suitcases and an umbrella. It was the Government's theory that these items were purchased by Palmer with the proceeds from the robbery. Palmer claims that their admission into evidence violated the fourth and fifth amendments.

■ The assertion that production of physical evidence violates Palmer's fifth amendment privilege against self-incrimination must be rejected. The items produced at trial by Anderson were neither "testimonial nor communicative" in nature, and their introduction therefore did not compel respondent to become a witness against himself in violation of the fifth amendment. *Warden v. Hayden*, 387 U.S. 294, 302–03, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Appellant's citations to cases involving a taxpayer's records lodged with an accountant or attorney are not, therefore, on point. See, e. g., *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *United States v. Kasmir*, 499 F.2d 444 (5th Cir. 1974), *reversed,* —— U.S. ——, 96 S.Ct. 1569, 48 L.Ed.2d 39, 44 U.S.L.W. 4514 (1976).

■ Palmer also argues that the use of his attorney's testimony violates his fifth amendment privilege since the client and attorney are one for fifth amendment purposes and Palmer could not have been forced to testify. In order to invoke the attorney-client privilege, the person asserting the privilege must establish that the communication to be protected was made in confidence for the purpose of obtaining legal advice. *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973). The attorney-client privilege does not help Palmer for two reasons: (1) the communication was not confidential since a third party was involved, and (2) the testimony involved his attorney's role as a transfer-shipping agent dealing with material real evidence, not as a legal advisor concerning a confidential communication.

■ Palmer also contends that his fourth amendment rights were violated because he had a reasonable expectation of privacy in the items subpoenaed. We do not explore the issue of a reasonable expec-

tation of privacy, however, because the use of a properly limited subpoena does not constitute an unreasonable search and seizure under the fourth amendment. *Hale v. Henkel*, 201 U.S. 43, 73, 76, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 195, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *United States v. Bausch & Lomb Co.*, 321 U.S. 707, 727, 64 S.Ct. 805, 88 L.Ed. 1024 (1946). A proper subpoena is sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. *In Re Horowitz*, 482 F.2d 72 (2nd Cir. 1973). Although a subpoena results in a compulsory production of private property, it does not involve the type or degree of intrusion found in an ordinary search and seizure; therefore, it does not require probable cause supported by oath or affirmation, as would be required for a search warrant. The standard for a subpoena is reasonableness. *Id.* at 77. Since Palmer did not raise any objection to the subpoena itself and did not contend that it was irrelevant, vague or overbroad, the admission into evidence of his property taken from his attorney by subpoena did not violate his fourth amendment rights.

### Scope of Cross-Examination

Palmer contends that the district court abused its discretion regarding the scope of his cross-examination. His testimony on direct questioning covered his tourist travels after he last left Seattle, his expenditures for a camera and photograph album the previous summer, and by implication his expenditure for food, lodging, and transportation during his travels. At the end of his direct testimony, Palmer categorically and unequivocally denied robbing the bank. On cross-examination he was questioned about his finances, including his prior unemployment, the source of money found on him at his arrest, the value of the personal property found at his arrest, and the source of the money used to purchase such items.

The general rule regarding the scope of cross-examination of a defendant is found in *Brown v. United States*, 356 U.S. 148, 154–55, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958) wherein the Supreme Court stated that:

> If he [the defendant] takes the stand and testifies in his own defense his credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination.

The range of evidence that may be elicited for the purpose of discrediting a witness is very liberal. 3A Wigmore, Evidence § 944 at 778 (Chadburn rev. 1970). Inquiry is permitted concerning his capacity to remember, to observe, and to recount, and for the purpose of testing his sincerity, truthfulness and motives. *Lewis v. United States*, 373 F.2d 576, 578 (9th Cir.), *cert. denied*, 389 U.S. 880, 88 S.Ct. 116, 19 L.Ed.2d 173 (1967); *United States v. Dillon*, 436 F.2d 1093, 1095 (5th Cir. 1971). "This may be done with respect to subjects not strictly relevant to the testimony given by the witness on direct examination. The extent of the cross-examination is a matter within the discretion of the trial court." *Lewis, supra* at 578, *quoting Young Ah Chor v. Dulles*, 270 F.2d 338, 342 (9th Cir. 1959).

Palmer's direct testimony touched on his expenditures for certain items found in his possession at the time of his arrest, and by implication his expenditures during his travels. Therefore, the Government's inquiry into the source of the money used to purchase the items and pay for his traveling expenses was reasonably related to matters embraced on direct examination. In addition, Palmer by his claim of alibi as well as his direct statement under oath of total non-involvement in the robbery opened the door to questions concerning the reliability, truthfulness and credibility of his testimony. In a crime such as bank robbery where pecuniary gain is a motive, evidence of a defendant's limited income prior to the robbery and possession of large sums of money and valuable

goods after the robbery tends to impeach his testimony concerning his non-involvement. Certainly on these facts the discretion of the trial court, which is very broad in these areas, was not abused. *United States v. Johnson*, 285 F.2d 35, 40 (9th Cir. 1960); Fed.R.Evid. 611(b).

### Probable Cause to Arrest

■ On September 8, 1975, the bank was robbed. Three days later Palmer's picture was positively identified as the robber's by two of the victim tellers. On September 16, 1975, Palmer was indicted and an arrest warrant issued.

The next day, Officer Ferguson stopped Palmer near Roosevelt, Utah, because he had committed a traffic violation. Palmer showed the officer his license, which had the name Everett Alan Palmer, his photograph, and a Seattle address. The car had a South Dakota license plate. Palmer then produced a registration certificate which was not in his own name. He also produced a notarized letter indicating he had recently purchased the car in yet a third, different state. Officer Ferguson noted that Palmer was nervous. A traffic citation was issued and Palmer was released.

Ferguson was suspicious of Palmer, so he called in a check to the National Crime Information Center for both the car and the driver. In a few minutes Ferguson learned by radio that Palmer was wanted for armed robbery in Seattle, Washington. A short time later Ferguson overtook Palmer and placed him under arrest.

There was probable cause to make the arrest. Palmer's name was identical to the name on the arrest warrant, the address on his license linked him to Seattle where the crime was committed, he behaved nervously, his registration was not in order and he had recently purchased the car. *United States v. King*, 472 F.2d 1, 7 (9th Cir. 1972), *cert. denied*, 414 U.S. 864, 94 S.Ct. 37, 38 L.Ed.2d 84 (1973); *United States v. McCray*, 468 F.2d 446 (9th Cir. 1972).

AFFIRMED.