**Roosevelt TURNER, Petitioner,**

v.

**Vernon HOUSEWRIGHT, Respondent.**

**No. CV-R-82-271-ECR.**

United States District Court, D. Nevada.

Dec. 20, 1984.

N. Patrick Flanagan, III, Asst. Federal Public Defender, Reno, Nev., for petitioner.

Richard Bryan, Atty. Gen., State of Nevada, Carson City, Nev., for respondent.

## ORDER

EDWARD C. REED, Jr., District Judge.

Roosevelt Turner petitions this Court under 28 U.S.C. § 2254 for a writ of habeas corpus. Presently incarcerated at the Nevada State Prison, Turner was convicted of two counts of kidnapping, two counts of robbery, and one count of burglary. This Court, by order dated June 16, 1983, ap-

pointed counsel to represent Turner on his petition.

In support of his petition Turner argues: (1) that at an alleged interrogation by a police officer he did not receive his *Miranda* rights; (2) that he was denied counsel at a critical stage of the proceedings; (3) that the testimony of an unrelated crime was not only erroneously admitted into trial, but that the trial court failed to give a limiting instruction regarding the testimony to the jury; (4) that a police detective continued to interrogate him following his invocation of his *Miranda* rights; (5) that he was denied effective counsel at his trial; (6) that there was insufficient evidence to support the jury's verdicts; (7) that the charges of kidnapping and use of a deadly weapon were merely incidental to the charge of robbery and, therefore, merged into the charge of robbery; (8) that the trial court failed to instruct the jury on the essential elements of robbery; (9) that the state unconstitutionally withheld evidence from Turner of an alleged statement made by him; and (10) that the absence of a material witness denied him a fair trial.

These issues were properly raised before the Nevada Supreme Court. Thus, Turner has exhausted his state remedies. *See Hall v. Sumner*, 682 F.2d 786, 788 (9th Cir.1982).

Although Turner did not request an evidentiary hearing, this Court considered those factors which would require one to be held. *See Townsend v. Sain*, 372 U.S. 293, 312–313, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963). The record before this Court adequately provides the necessary information and thus no evidentiary hearing is required.

*Facts*

Following a jury trial, Turner was convicted of two counts of robbery, two counts of kidnapping, and one count of battery with the intent to commit robbery, each with the use of a deadly weapon.

One night, at approximately 11:30 p.m., the two victims were forced, at gunpoint, to admit Turner and his cohort into their house in Las Vegas. Turner and his companion were later joined by a third intruder. During the lengthy ordeal which followed, the victims were tied, threatened with death, moved to various rooms throughout the residence, and physically harmed. Under coercion, the victims revealed the location of their money and jewelry. Turner and his companions left the victims' house only after coercing a promise from one of the victims to obtain more money.

*Analysis*

Turner first contends that at an interview at the police station, the police detective failed to advise him of his rights. Following consultation with his attorney, Turner went to the police station to recover his personal effects. When Turner arrived, he was asked to wait for a Detective Jordan. Detective Jordan took Turner to an interview room.[1] To determine the admis-

---

1. At trial, Detective Jordan testified to the jury as follows: Record, Vol. 3 440–442.

BY MR. LAVELLE:

Q I believe when we left off, Detective Jordan, we were talking about a conversation you had with Roosevelt Turner along about the first part of May. Is that correct?

A Yes Sir.

Q And where was this conversation held?

A At the detective division.

Q And prior to the conversation you had with Mr. Turner, did you advise him of his Constitutional rights?

A Yes.

Q Could you explain to the Court and jury what rights you advised him of?

A He had the right to have his attorney present, any questions would be asked of him could be and would be held against him in a court of law, he already had an attorney representing him, Mr. Pursel, had already called and talked to us earlier.

Q Now, excuse me, go ahead.

A He was advised if he wished to have his attorney present he could do so.

Q Now, did Mr. Turner express acknowledgment of you stating those rights to him?

A Yes, sir.

Q In what manner?

A I asked him if he understood them and he says, "Yes."

Q Now, did you make a statement to Mr. Turner regarding this incident?

A Yes, sir.

Q And what statement was that, Officer?

A Well, part of the conversation was that I told him if he gets in and they identify him as one that stuck the gun in the girl and says, feel

sibility of the contents of this conversation, the trial judge held a hearing outside the presence of the jury. At that hearing, there was conflicting testimony between Detective Jordan and Turner. Detective Jordan testified that he gave Turner his *Miranda* rights. Record, Vol. 3, at 423. Turner, on the other hand, testified that he was not given any of his *Miranda* rights by Jordan. Record, Vol. 3, at 435. The

trial court found as a matter of fact, that Turner had been given his *Miranda* rights.

■ Turner asks this Court to reject the factual finding by the state court that Detective Jordan gave Turner his *Miranda* rights. But 28 U.S.C. § 2254 requires that this Court accord factual determinations a "presumption of correctness," unless one of a number of special conditions is met.[2]

---

this go off, then they are going to hang him. He said, "It wasn't me, it was Will."

Q He said, "It wasn't me, it was Will"?

A He didn't say, "It wasn't me." He just said, "It was Will."

Q And did he give a last name of Will?

A No, sir.

Q Did you have any further conversation with him after that regarding this incident?

A Yes. He stated he had nothing to do with it. He didn't want to talk about it.

BY MR. LAVELLE: I have no further questions of Detective Jordan, your Honor.

BY THE COURT: Cross-examination, Mr. Woofter?

BY MR. WOOFTER: Yes, your Honor.

CROSS–EXAMINATION

BY MR. WOOFTER:

Q Detective Jordan, I will start with the end of your testimony first. You stated this alleged conversation with Mr. Turner was sometime in May, early part of May, I believe your testimony was?

A I believe so. I'd have to get the evidence impound out to give you the right day. Right around that time.

Q Well, not going into the exact date, but approximately sometime in the early part of May?

A Yes, sir.

Q Would that be a fair assumption? And when is the first time you advised anybody of this conversation as far as the district attorney's office or Mr. Pursel, the counsel for Mr. Turner, or myself, counsel for Mr. Corbin?

A I believe I called Mr. Lavelle about it either Monday or Tuesday. I wasn't right sure.

Q And that was the first time you advised anybody of such—of this conversation here in the courtroom?

A Yes, sir.

Q Did you at any time since early May up to the present time, which is the middle of August, prepare a report of this alleged conversation you had with Mr. Turner?

A No, Sir.

**2.** 28 U.S.C. § 2254(d) provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State

court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, a written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the state court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs number (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

*Sumner v. Mata,* 449 U.S. 539, 549–550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981).

▇ Turner has not claimed that any of the special conditions is present in this case. Nor does evidence of the presence of any of the conditions appear in the record. This Court can reject the factual finding only if Turner provides "convincing evidence" that the finding was erroneous. See *Id;* 28 U.S.C. § 2254(d). He has not met that burden. The only evidence he seems to rely on is his testimony at the hearing that he was not given the *Miranda* rights. However, the trial court heard the witnesses, Jordan and Turner, and found that Jordan had in fact given Turner his *Miranda* rights. Therefore, we reject Turner's claim. See also *Wicker v. State,* 95 Nev. 804, 805, 603 P.2d 265, 266 (1979) (where there is conflicting testimony, the factfinder's determination will not be disturbed where there is substantial evidence to support it.)

Turner next argues that he was denied his constitutional right to counsel at a critical stage of the proceedings. Turner again bases this argument on the interview with Detective Jordan. As previously discussed, Turner was advised of his right to counsel. The record reveals that Turner did not request counsel. Turner voluntarily came to the police station and was allowed to leave unhindered after the interview.

▇ There is not an issue here as to whether this was a "custodial interrogation" triggering *Miranda.* Turner received his rights. Rather the issue is whether Turner's statements were voluntary. See *Taylor v. Cardwell,* 579 F.2d 1380, 1382 (9th Cir.1978). The trial court found that Turner's statements were voluntary. This finding followed a full and fair hearing by the state court. Further, it has substantial support in the record. In applying the facts to the legal standard, this Court finds that Turner's spontaneous statement was voluntary. Thus, this claim does not justify habeas relief.

▇ Turner contends that the trial court erroneously admitted testimony of an unrelated crime and failed to give a limiting instruction as to that testimony. Turner complains of testimony of a sexual assault committed by one of his cohorts. The acts described took place during the four-hour ordeal. It would have been impossible to extract that testimony relating to the sexual assault from the victim's recount of what happened to her that night. Turner's own counsel stated, ". . . I suppose it would be almost an impossibility to extract out from those matters what she is about to get into that pertain to Mr. Golden (the man accused of the assault). . ." Record, Vol. 3, at 190.

In addition, this Court reviewed the instructions as a whole. The failure to give a limiting instruction on this testimony did not deny Turner's due process rights. See *Cupp v. Naughten,* 414 U.S. 141, 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The victim was explicit that the sexual assault was committed by Golden. Record, Vol. 3, at 291–294. Further, she testified that Turner was not in the same room. *Id.* Turner was not unconstitutionally prejudiced. Turner simply challenges the correctness of the state evidentiary rulings and the jury instructions. He has not alleged any deprivation of federal rights which would entitle him to habeas relief. See *Gutierrez v. Griggs,* 695 F.2d 1195, 1197 (9th Cir.1983). Thus, this argument does not support habeas relief.

▇ Turner's next argument rests again on the interview that took place at the police station. Turner argues that while at the police station to retrieve his property, the police officer connected with the investigation of the crimes continued to press him after he had invoked his intent and desire not to talk about the case.

The Nevada Supreme Court found that the continued questioning of Turner did violate Turner's constitutional right to remain silent. *Turner v. State,* 98 Nev. 243, 246, 645 P.2d 971, 972 (1982). However, under the law announced by the U.S. Supreme Court in *Solem v. Stumes,* — U.S. ——, 104 S.Ct. 1338, 99 L.Ed.2d 579 (1984), this Court finds that it was not constitutional error.

■ The Supreme Court held in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1982) that once a suspect has invoked the right to counsel any subsequent conversation must be initiated by him. Applying *Edwards* to this case, it is clear that Turner's rights were violated. However, *Edwards* is not to be applied retroactively. *Solem,* 104 S.Ct. at 1345. In *Solem,* the Court found that the effect of further interrogation by the police after a request for counsel was not such as to taint the truth worthiness of the subsequent inculpatory statement and, therefore, *Edwards* was not to be retroactively applied in collateral review of final conviction. *Id.* The trial in this case took place in August, 1979, well before *Edwards.* Therefore, under the prior cases of the Supreme Court, Turner's constitutional rights were not violated. *Id.* This Court must, however, determine whether the Ninth Circuit standard was met. *Id.* 104 S.Ct. at 1346. Prior to *Edwards,* the Ninth Circuit did allow statements by a defendant after there has been a request for counsel. *See United States v. Rodriguez-Gastelum,* 569 F.2d 482, 486 (9th Cir.1978) *cert. denied* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978). In addition, a lesser standard is applied where, as here, the suspect only indicates an intention to invoke this fifth amendment right to remain silent and does not clearly invoke his right to counsel. *Michigan v. Mosley,* 423 U.S. 96, 104 n. 10, 96 S.Ct. 321, 326 n. 10, 46 L.Ed.2d 313 (1975); *in accord Christopher v. State of Fla.,* 582 F.Supp. 633, 644 (1982). The conduct by Detective Jordan was acceptable under prior cases in the Ninth Circuit. Jordan did not badger Turner.[3] Prior to *Edwards,* the voluntary statement was admissible. Thus, this claim by Turner does not support federal habeas relief.

■ Turner also argues that he was denied effective assistance of counsel. The Supreme Court has recognized that the "right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). The standard to determine effective assistance of counsel was recently enunciated by the Court in *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court held that: "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 2064. First the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant to a fair trial, a trial whose result is reliable. *Id.*

■ A careful review of the record reveals that not only does Turner's claim fall far short of this test, but that counsel's performance in this case was of a high degree of competence. Counsel conducted extensive cross-examinations. He skillfully pointed out discrepancies in the testimony and competently argued Turner's case to

---

**3.** Jordan testified at the trial court's evidentiary hearing as follows:

  Q Could you explain to the Court the circumstances under which you met Mr. Turner?

  A Mr. Pursel had called me in reference to some money that was impounded. I was not that familiar with the money, and I advised him to send Mr. Turner up and it would be released back to him and I could get the evidence impound out and give you the right date, but I don't recall it. Anyhow, when he come in where—I sent him down to the interview room, advised him of all of his rights and tried to talk to him about the case. He wouldn't say anything to me at all about the case, whatsoever. So I just told him, I said, "Hey, you get in there, you get up before that jury and they can get up there and testify you are the guy that stuck that gun up her and, man, you can feel this going on, and they are going to hang you." He said, "It wasn't me, it was Will." And then he didn't want to go on and say any more about it. I asked him if it was a narc rip-off or what kind of a case it was or anything, and he just didn't want to say any more about it. Record, Vol 3 at 242.

the jury. There is no showing by Turner of deficient performance by his trial counsel. Further, there was no prejudice to Turner. Thus this claim does not support a claim for habeas relief.

■ Turner next argues that there was insufficient evidence to support the jury's verdict. The critical inquiry in a federal habeas corpus review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Viewing the record in the light most favorable to the state, there was sufficient evidence presented from which an inference could be drawn that a rational trier of fact could have found beyond a reasonable doubt that Turner was guilty of the offenses charged. Thus, this contention does not support federal habeas relief.

■ Turner next contends that the charges of kidnapping and use of a deadly weapon were merely incidental to the charge of robbery and, therefore, merged into the charge of robbery.

Under Nevada law, kidnapping is as follows:

"NRS 200.310 1. Every person who shall willfully seize, confine, inveigle, entice, decoy, abduct, conceal, kidnap or carry away any individual human being by any means whatsoever with the intent to hold or detain, or who holds or detains, such individual for the purpose of committing extortion or robbery upon or from such individual, ... shall be deemed guilty of kidnapping in the first degree."

Further, under Nevada law, a separate conviction of kidnapping will lie if the movement of the victims is not incidental to the associated offense and there is a substantially increased risk of harm beyond that necessarily present in the associated offense. *See Wright v. State,* 94 Nev. 415, 417, 581 P.2d 442, 443–444 (1978). Whether the movement of the victims is incidental to the associated offense and whether it increased the risk of harm to the victims are questions of fact to be determined by the trier of fact in all but the clearest of cases. *Sheriff v. Medberry,* 96 Nev. 202, 204, 606 P.2d 181, 182 (1980).

■ The evidence in this case is that one of the victims was originally brought into his home at gunpoint. During the four-hour ordeal he was transported to several different rooms in the house. The second victim was also moved from room to room. The jury's finding is, therefore, supported by the evidence. Thus, this contention does not provide federal habeas relief.

■ Turner also argues that the trial court failed to instruct the jury on the essential elements of robbery. In considering a habeas corpus petition which seeks reversal of a state court conviction, a federal court does not review jury instructions in isolation but in the context of the overall charge to the jury as a component of the entire trial process. The contested instructions cannot be merely "undesirable, erroneous, or even 'universally condemned,'" but must violate the defendant's due process rights guaranteed by the Fourteenth Amendment. *Cupp v. Naughten,* 414 U.S. 141, 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

■ Turner complains that the trial court failed to instruct the jury that specific intent to permanently deprive the owner of his property is an essential element of the crime of robbery. Under Nevada law, an accurate instructions upon the *basic* elements of the offense charged is essential, and the failure to so instruct constitutes reversible error. *Turner v. State,* 96 Nev. 164, 166, 605 P.2d 1140, 1141 (1980); *Dougherty v. State,* 86 Nev. 507, 509, 471 P.2d 212, 213 (1970). A review of the instructions as a whole reveals that the trial court gave the basic elements of the crime of robbery. Instructions 13–17. Thus, viewed as a whole in the context of the trial process, the jury instructions did not violate Turner's due process rights.

■ Turner's next argument again rests on the inculpatory statement made by

him to Detective Jordan. In this argument, Turner contends that the failure of the prosecution to advise him of the statement deprived Turner of effective assistance of counsel and a fair trial. Turner argues that the statement may have been exculpatory and therefore should have been released to the defendant prior to trial. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963).

The record reflects that the prosecution was not aware of Turner's statement until Detective Jordan testified. No written record of the statement was made prior to trial. The prosecutor stated that he had learned of the statement two days before Jordan testified. Record, Vol. 3, at 424.

This Court does not read this statement as being exculpatory. However, even if this Court finds that the *Brady* rule was violated, it does not automatically warrant reversal of a defendant's conviction. *United States v. Miller,* 529 F.2d 1125, 1128 (9th Cir.1976); *United States v. Diaz-Rodriquez,* 478 F.2d 1005, 1008 (9th Cir.1973), *cert. dismissed,* 412 U.S. 964, 93 S.Ct. 3024, 37 L.Ed.2d 1013 (1973). Turner learned of the statement at trial. Thus, our inquiry on appeal is not whether the evidence, had it been disclosed prior to trial, might reasonably have affected the jury's judgment on some material point. Rather, it is whether the lateness of the disclosure so prejudiced Turner's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial. *Miller,* 529 F.2d at 1128; *United States v. Hibler,* 463 F.2d 455, 459 (9th Cir.1972). The trial judge held a hearing outside the presence of the jury to determine whether to admit the statement. This does not seem to be the case where the evidence, if promptly disclosed, would have opened the door for the defense to new witnesses or documents requiring time to be marshalled and presented. *See United States v. Baxter,* 492 F.2d 150, 174 (9th Cir.1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

Finally Turner urges this Court to grant him a writ of habeas corpus based on the absence of Angela Adams at the defense's case in chief. Adams was one of the victims in this case. She testified during the state's case in chief and was extensively cross examined by Turner. Turner argues that because of impeaching testimony which indicated that Adams had perjured herself on the stand, he had the right to confront her again. However, Turner did not even attempt to call Angela Adams to the stand. His co-defendant's counsel, Woofter, did. But when Woofter found that she was not available he rested. Record, Vol 3, at 557–558. Turner then rested as well. Turner made no request to call Adams. Neither party sought a continuance. Thus, this contention does not support habeas relief.

*Conclusion*

Turner failed to raise any issues which would support a writ of habeas corpus from this Court.

IT IS, THEREFORE, HEREBY ORDERED that the petition for writ of habeas corpus be denied.