

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 15-10147 |
| | 16-10401 |
| Plaintiff-Appellee, | |
| | D.C. No. |
| v. | 2:13-cr-00042-APG-PAL-1 |
| JOSEPH FELIX, | |
| | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted February 16, 2018
San Francisco, California

Before: SCHROEDER, TORRUELLA,** and RAWLINSON, Circuit Judges.

Defendant-Appellant Joseph Felix ("Felix") appeals his conviction and

sentence, following a jury verdict finding him guilty of being a convicted felon in

possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). We

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\** The Honorable Juan R. Torruella, United States Circuit Judge for the
First Circuit, sitting by designation.

affirm Felix's conviction, but vacate his sentence and remand to the district court for resentencing. We address each of Felix's arguments in turn.

**1.** Felix first argues that the Government's belated discovery disclosures violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), and that the district court abused its discretion when it failed to sanction the Government by excluding Healy as a Government trial witness.

A *Brady/Giglio* violation occurs when (1) the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that evidence is suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensues. *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). When there is a belated disclosure, the inquiry on appeal is "whether the lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976).

Felix fails to show that the belatedly disclosed evidence revealed anything that required further extensive investigation, or that he was unable to investigate its full impeachment and evidentiary value. Notably, Felix repeatedly declined the district court's offers to continue the case to allow him additional time to investigate the

disclosures. Under these circumstances, the Government's actions did not prejudice Felix such that he was "prevented from receiving his constitutionally guaranteed fair trial." *Miller*, 529 F.2d at 1128.

**2.** Felix next asserts that the district court applied the wrong legal standard in response to his *Batson* challenge during jury selection, and erroneously found that he failed to establish a prima facie showing of racial discrimination. *See Batson v. Kentucky*, 476 U.S. 79 (1986).

During jury selection, the Government used a peremptory strike to remove Juror No. 19, an African American woman. Although the court applied an incorrect legal standard to the extent it required demonstration of a prima facie case of discrimination, a comparison of the jurors reveals that, Juror No. 19—unlike any of the other seated jurors—was unemployed. Felix argues that, in this case, the distinction between "unemployed" and "retired" is one without a difference, but the two are not synonymous and we cannot require that the Government consider them to be so. We note that the Government also struck the two other members of the venire who stated that they were unemployed.

**3.** Nor did the district court err in its evidentiary rulings. First, Felix maintains that the district court violated his Fifth Amendment privilege against self-incrimination when it permitted the Government to elicit testimony from two

witnesses, Officer Rowe and Paramedic Lott-Shaw, about Felix's silence. The objective circumstances show that Felix was not "in custody" for purposes of *Miranda* when questioned by Officer Rowe. While Felix was not free to leave at the time the question was asked, there are many circumstances in which "a person . . . detained by law enforcement officers . . . is not 'in custody' for *Miranda* purposes." *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001).

No law enforcement was present during the paramedic's questioning of Felix, and the paramedic was acting as a private actor, not an agent of the Government. Thus, the paramedic was not bound by the Fifth Amendment's privilege against self-incrimination. *See United States v. Oplinger*, 150 F.3d 1061, 1066-67 (9th Cir. 1998), *overruled per curiam on other grounds*, *United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010).

Nor did the district court abuse its discretion in qualifying Fried as an expert witness and permitting him to testify. This Circuit has found toolmark identification evidence to be reliable and held expert testimony of that evidence to be admissible. *United States v. Cazares*, 788 F.3d 956, 988 (9th Cir. 2015). The district court heard extensive testimony about Fried's qualifications at the *Daubert* hearing, and acted well within its limits in qualifying Fried as an expert. *See Kumho Tire Co., Ltd. v.*

*Carmichael,* 526 U.S. 137, 152–53 (1999) (stating that a district court is afforded broad latitude to determine the reliability of expert testimony*).*

The district court did not violate Felix's Sixth Amendment right to confrontation by permitting the Government to present the jury with the 911 call made after Felix was shot. The Confrontation Clause bars "'admission of testimonial statements of a witness who doesn't appear at trial' if the statements are offered to 'establish[] the truth of the matter asserted,' unless the witness is unavailable and the defendant has had a prior opportunity for cross-examination." *United States v. Brooks*, 772 F.3d 1161, 1167 (9th Cir. 2014) (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54, 59–60 n.9 (2004)). But, when the primary purpose of the statement is to respond to an emergency, it is not testimonial as it is not designed to "create a record for trial," and is therefore not subject to confrontation. *Michigan v. Bryant*, 562 U.S. 344, 358 (2011); *see Davis v. Washington*, 547 U.S. 813, 822 (2006). Here, the purpose of the 911 call was to seek medical assistance for Felix, and therefore it was not testimonial.

Finally, Felix's claim that the cumulative effect of the district court's evidentiary rulings denied him a fair trial must fail. There were no evidentiary errors warranting reversal, and the cumulative effect of those proper rulings was not prejudicial.

**4.**     The district court likewise did not err in denying Felix's motion for acquittal at the close of the Government's case-in-chief pursuant to Federal Rule of Criminal Procedure 29(a), or his renewed motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c).

Viewing the evidence in the light most favorable to the prosecution, *United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009), a rational jury could have found that the Government presented evidence sufficient to meet all of the elements of the crime charged. The combination of the 911 call, which was properly admitted into evidence, *see supra* Part 3, as well as testimony from Sergeant Pennucci about the entrance and exit points of the bullet into Felix's leg, the bullet's trajectory, and the angle of the gun when it was deployed, amounted to sufficient evidence from which a reasonable jury could have concluded that Felix shot himself—and therefore possessed a firearm.

The jury could have also reasonably concluded that the gun that Felix possessed was the Springfield charged in the indictment. The Government presented circumstantial evidence, *see United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004), of the following: despite a search of the shooting site, no gun was found; an individual nicknamed "Tank" had been at the party when Felix was shot, but had fled before the police arrived; Healy identified a house where the gun might be

located, and upon searching it, police found Tank present and a Springfield handgun submerged in the toilet;  the submerged gun had no magazine in it; the magazines found at the shooting site matched the Springfield found in the toilet; Felix's DNA matched the blood on the magazines found at the shooting site; the odds of a DNA mismatch were less than one in 700 billion; and the bullets and casing found at the scene were not inconsistent with the Springfield.

5.      The district court similarly did not err in denying Felix's motion for a new trial. Felix proposes several reasons why he believes a new trial should have been granted. The first of them pertains to newly discovered evidence of a meeting between Healy, a prosecutor, and federal agents during the second day of trial.  Just prior to the meeting, Healy told her third version of the events, that Tank shot Felix with a different firearm and that she had been threatened into being untruthful earlier.  In response, the prosecutor gave Healy copies of the statutes for perjury, *see* 18 U.S.C. § 1621, and making a false statement to a federal officer, *see* 18 U.S.C. § 1001, and advised Healy of the relevant penalties.  The prosecutor pointed out that Healy's different versions—first that she shot Felix, and then that Tank shot Felix—were mutually exclusive and therefore one of those statements had to be false, in violation of § 1001.  Finally, the prosecutor admonished Healy, stating that "we both know that neither of those are what actually happened, and you need to tell the truth."

Felix avers that the prosecutor threatened Healy to testify favorably for the Government, or else she would have been prosecuted for a crime, and that the Government violated *Brady* and *Giglio* by failing to disclose that threat. But, to find a *Brady* violation, the details of the meeting, taken in context of the entire record, must "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler v. Greene*, 527 U.S. at 290 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). Here, the Government's failure to disclose the meeting was inconsequential as there was no reasonable probability of a different result.

The Government's conduct did not amount to such a substantial interference that it denied Felix a fair trial. Perjury warnings are not improper per se, and "[a] defendant's constitutional rights are implicated only where the prosecutor . . . employs coercive or intimidating language or tactics." *United States v. Vavages*, 151 F.3d 1185, 1189 (9th Cir. 1998). In this case, Healy's three accounts of how Felix was shot, along with her relationship status with the defendant, gave the Government a valid basis for believing Healy would lie on the stand. Even if the prosecutor's admonition was a strong one, it was justified here. *See id* at 1190. ("[U]nusually strong admonitions against perjury are typically justified only where the prosecutor has a more substantial basis in the record for believing the witness might lie.").

8

The Government also did not substantially interfere, or commit fraud on the court, by failing to grant Healy sufficient immunity to testify. There is no evidence in the record to support Felix's claim that the Government's conduct interfered with Healy's "free and unhampered determination to testify." *Williams v. Woodford*, 384 F.3d 567, 602 (9th Cir. 2004). Rather, the Government granted Healy "use immunity" and argued that Healy was compelled to answer questions because, as a result of her immunity, she did not have a Fifth Amendment right to assert. Healy was aware, and even confirmed to the district court, that she knew that she could not incriminate herself with anything that she said, other than for perjury. Felix seeks relief from the very thing for which he advocated in the district court: the exclusion of Healy's testimony. This argument too must fail.

Finally, the district court did not abuse its discretion in denying Felix an evidentiary hearing on his motion for new trial. The district court correctly found no *Brady* or *Giglio* violations, prosecutorial misconduct, or fraud on the court, and properly relied on inferences supported by the facts in the record. Further, all the facts necessary to make its decision were contained in the record and there was no need for additional findings requiring a hearing.

**6.** The parties agree that Felix received a sentencing enhancement under the Armed Career Criminal Act's now-invalid residual clause, *see Johnson v. United*

9

*States*, 135 S. Ct. 2551 (2015), and that the case should be remanded for resentencing. We therefore vacate Felix's sentence and remand for resentencing. Felix's challenge to the substantive reasonableness of his sentence is therefore moot.

Felix's conviction is **AFFIRMED**. His sentence is **VACATED** and **REMANDED** for resentencing.

**U.S. v. Felix, Case Nos. 15-10147 and 16-10401**
**Rawlinson, Circuit Judge, concurring:**

I concur in the majority disposition. I write separately to emphasize how close the government came to coercion in its dealings with Ms. Healy. It is one thing to caution a prospective witness against committing perjury. It is quite another thing to inform a witness that she has already essentially committed perjury before she even takes the stand. In my view, the latter scenario comes perilously close to coercion. *See United States v. Vavages*, 151 F.3d 1185, 1188 (9th Cir. 1998) ("Unnecessarily strong admonitions against perjury aimed at discouraging defense witnesses from testifying have been held to deprive a criminal defendant of his Sixth Amendment right to compulsory process . . ."). It would behoove the government to hew more closely to the approved admonitions.