KNOLL, Judge.
Defendant, Gregory Cormier, was indicted by the grand jury and later convicted by a twelve member jury for the following offenses: attempted second-degree murder; aggravated crime against nature; and armed robbery, violations of LSA-R.S. 14:27 and 14:30.1, 14:89.1, and 14:64 respectively. The sentencing court imposed the following sentences, to run consecutively: 50 years at hard labor for the conviction of attempted second-degree murder; 15 years at hard labor without benefit of parole, probation or suspension of sentence for the conviction of aggravated crime against nature; and 50 years at hard labor without benefit of parole, probation or suspension of sentence for the conviction of armed robbery. Defendant appeals, urging seven assignments of error and requesting a review for errors patent. It is court policy to conduct an errors patent review on all cases pursuant to LSA-C.Cr.P. Art. 920(2); therefore, it is not necessary to raise errors patent as an assignment of error.
FACTS
On the night of October 13, 1982, defendant and Michael Owen, a co-defendant, broke into the home of the 51 year old victim who resided alone. The victim was beaten, stabbed, dragged through her blood, sexually assaulted and robbed by defendant and Owen. Money and coins, including old silver collectors’ coins, which were kept in a mayonaise jar in an old hat box, were taken from the residence. Defendant and Owen also forced the victim at knife point to perform oral sex. After they left the residence at approximately 1:15 a.m., the victim telephoned her son whose residence was located three blocks away. She related the incident to him and described her assailants as two men, one dark-haired and the other a bit taller and blond-haired; she identified one of them as the “Owens boy.”
Lt. McCann of the Sulphur Police Department received a call at approximately 1:30 a.m. on October 14,1982, reporting the events. The victim’s son stated that Owen once lived in a trailer with Carl Evans on North Crocker Street in Sulphur. Lt. McCann dispatched Officer Johnson to Evans’s residence to ascertain whether Evans knew Owen’s whereabouts. Officer Johnson arrived at Evans’s residence, located approximately five blocks from the crime scene, at approximately 2:30 a.m. He saw someone looking out of the window of the trailer as he pulled up. Soon thereafter, the lights in the trailer went off. He repeatedly knocked on the front door and identified himself as a police officer. Although he heard movement inside, no one answered the door. After speaking with Lt. McCann, Lt. Carroll returned to the trailer and knocked once more; still no one answered. He and the other officers then entered the trailer without a warrant and awakened the occupants, including defendant and Owen. Carl Evans signed a consent form to search the premises. A search revealed a small amount of marijuana and several items missing from the victim’s residence, including old coins and her *1240 medicine bottles. Defendant and Owen were subsequently charged with crimes committed in connection with this incident.
ASSIGNMENT OF ERROR NUMBER ONE
In this assignment defendant contends the trial court erred in permitting the State to amend its answer to his discovery motion on the day of the scheduled trial to include fingerprint analysis reports which were available twenty months earlier.
The State’s duty to disclose evidence is a continuing one and if the State, subsequent to the ordered disclosure, discovers additional evidence or decides to use a particular item as evidence, it must notify the defendant of the existence of the additional evidence or its intended use at trial. State v. Ray, 423 So.2d 1116 (La.1982). Since the reports were not disclosed to defendant prior to trial, it is apparent that the State, at the time of trial, decided to use the reports as evidence and disclosed such information to defendant in compliance with LSA-C.Cr.P. Art. 729.3. If the State intentionally failed to disclose the reports, the trial court had discretion to impose any one of several sanctions. State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).
LSA-C.Cr.P. Art. 729.5 provides in pertinent part:
“A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate. ” (Emphasis added.)
In the instant case, the trial court granted defendant a continuance of three weeks. The remedy granted defendant was one specifically authorized by Article 729.5 and clearly within the trial court’s discretion. Since the State has otherwise complied with defendant’s discovery motion and defendant was granted a continuance, we find the trial court committed no reversible error in allowing the State to amend its answer to defendant’s discovery motion. Accordingly, we find this assignment of error without merit.
ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends the trial court erred in failing to grant his motions for mistrial made during trial because there was a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law. Defendant complains that the State’s failure to introduce syringes and marijuana paraphernalia seized when searching Evans’s trailer constituted a legal defect. Defendant further complains that he was not allowed to cross-examine police officers as to why charges were not filed in connection with the seizure of marijuana paraphernalia. We fail to find any error in this procedure. The State correctly withheld the introduction of marijuana paraphernalia and syringes when such evidence could be prejudicial to defendant, and further, it is irrelevant and immaterial to the prosecution of the charges. Finally, the search and seizure issue has already been ruled upon by this court, and is reported in State v. Cormier, 438 So.2d 1269 (La.App. 3rd Cir. 1983), affirmed, 453 So.2d 1202 (La.1984).
Accordingly, we find the trial court correctly denied defendant’s motions for mistrial; therefore, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE
In this assignment, defendant contends the trial court erred in denying his motion in limine wherein he sought to exclude scientific reports relating to Owen and evidence of Owen’s whereabouts when the *1241 incident occurred, and erred further in not granting defendant’s various attempts to restrict evidence presented to the jury as to his guilt or innocence. Defendant argues that the introduction of such evidence, in light of the seriousness of the crimes charged and the conviction of Owen, would confuse the jury and that the prejudicial effect of such evidence would outweigh its probative value.
The trial court’s ruling as to the relevancy of evidence should not be disturbed absent a clear abuse of discretion. State v. Walker, 394 So.2d 1181 (La.1981). If evidence is relevant and otherwise admissible, the fact that it is prejudicial does not bar its admission. State v. Smith, 418 So.2d 515 (La.1982); State v. Clift, 339 So.2d 755 (La.1976).
In the instant case, defendant and Owen acted in concert. Evidence of Owen’s whereabouts during commission of the crimes is relevant to defendant’s case. We find no abuse of the trial court’s discretion denying the motion in limine. Therefore, this assignment lacks merit.
ASSIGNMENTS OF ERROR FOUR, FIVE AND SIX
Through these assignments (submitting four and six combined) defendant contends he was denied a fair trial because the trial court denied him access to exculpatory evidence and that the verdict is contrary to the law and the evidence. The State contends that it had no exculpatory evidence. Defendant contends the statements by the witness, Grant Miller, constituted exculpatory evidence.
Miller stated that there were blood stains on defendant’s clothing. An examination of the clothing revealed no sign of blood. Defendant contends that Miller’s statement was exculpatory because it could be used to impeach Miller. Evidence that impeaches the testimony of a witness whose reliability may be determinative of defendant’s guilt may fall within the Brady rule requiring the state to disclose exculpatory evidence. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Roussel, 381 So.2d 796 (La.1980). Assuming Miller’s statement was Brady material, the State’s failure to furnish defendant with Miller’s statement would not warrant a reversal because the contents of the undisclosed statement were eventually brought out at the suppression hearing which was used to impeach another State’s witness. Moreover, the record shows no prejudice whatsoever resulting from the State’s failure to provide defendant with this information. Therefore, defendant was not deprived of his right to a fair trial.
Defendant further argues that the jury verdict was contrary to the law and evidence.
When sufficiency of evidence is raised on appeal, the critical inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Duncan, 420 So.2d 1105 (La.1982). In the instant case, defendant was convicted of attempted second-degree murder, aggravated crime against nature and armed robbery.
At trial the victim testified that two men broke into her home, one with blond hair and the other with black hair. She identified the man with the blond hair as the “Owens boy.” She also testified that they repeatedly told her they were going to kill her. She stated that both men banged her head on the floor, and the man with the black hair (defendant) stabbed her. The victim further testified: that one of her assailants pulled her gown off after they entered her home; that defendant had a knife and threatened to kill her; and that both men forced her to perform oral sex. Finally, several witnesses testified that the victim and her family collected coins, which defendant and Owen took from her house. The coins and the victim’s medicine bottles *1242 were seized when defendant and Owen were arrested.
Although the victim was unable to identify her assailants after the incident, partly because she was nervous and scared, several other witnesses testified to events that arose that same evening which implicated defendant and Owen. Sandra Leger testified that while she was working at the nearby 7-11 store, two men wearing plaid shirts, one blond and one brunette, purchased beer between 1:30 and 1:45 a.m. She identified defendant and testified that he said he did not know if he had enough money to pay for the beer but reached in his pocket and pulled out “quite a bit of money.” She further stated that defendant was wearing a plaid shirt which had a little tear in the chest or shoulder «area. Virginia Tyler, a fingerprint technician for the Sulphur Police Department, testified that defendant’s fingerprint and palm print matched the prints on a comic book from the victim’s son’s collection, which was stored in the victim’s bedroom. Further, Bruce Edwards, a witness for the State, testified that defendant called him a couple of days before this incident, saying that he knew where there was a jar of money and he wanted him to drive defendant and Owen uptown to get it.
After viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of armed robbery, aggravated crime against nature and attempted second-degree murder were proved beyond a reasonable doubt. Therefore these assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER SEVEN
Through this assignment, defendant contends the trial court erred by imposing cruel and unusual punishment in violation of the United States and Louisiana constitutions.
Article 1 § 20 of the Louisiana Constitution prohibits the imposition by law of excessive punishment. State v. Smack, 425 So.2d 737 (La.1983). The maximum sentences for defendant’s convictions are: 50 years at hard labor for attempted second-degree murder; 15 years at hard labor without benefit of parole, probation or suspension of sentence for aggravated crime against nature; and 99 years at hard labor without benefit of parole, probation or suspension of sentence for armed robbery. Defendant’s sentences fall within the statutory limit. However a sentence, although within the statutory limit, may violate a defendant’s constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). Given compliance with LSA-C.Cr.P. Art. 894.1 a sentence will not be set aside as excessive absent a manifest abuse of the sentencing court’s discretion. State v. Smack, supra; State v. Sepulvado, supra. The penalty imposed must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980).
In the instant case, the sentencing court noted defendant’s prior criminal record and stated:

“We have to take each case as they are [sic] presented to us. But, in looking at this case, I can’t remember of a worse one that I have seen. In this particular instance, you knew that this woman that you attacked was not in the best mental condition. You also knew that she had money there. You planned to go there, and to get that money. And, apparently, at any cost. What possessed you to do it, I don’t know. There’s no question that when you appeared, that you broke down the front door. You brutally attacked this woman, actually stabbing her several times, and cutting her, and letting her just bleed. And this didn’t go on just for a few minutes. You didn’t go in and just get the money and leave. You stayed, and tortured this poor woman for some period of time; the exact time, I do not know. It could be at least an hour. In the process, you made this woman degrade herself to the lowest by 
*1243
making her commit oral copulation. There was [sic] continual threats made on her, that you were going to kill her, and there was no doubt in my mind that this woman felt that you were going to kill her. She had no reason to believe otherwise, after she had been stabbed and cut and bleeding. In addition, there was also bruise marks all over this woman, about her head, when she had been thrown about in that house. When you finally got what you wanted, the money, you left that poor woman there to die. You, or no one else, tried to help her to do anything for her at the time. You left. It was hours later before you were ever picked up. So it appears that you and your cohort didn’t care whether the woman died or not. You certainly didn’t do anything to try to help her. And I know of nothing that you’ve done up to this point, which would indicate to me that I should now have mercy on you for having committed those crimes. ”

In light of the severity of the offenses, we cannot say that the penalties imposed were so disproportionate to the crimes committed, in light of the harm caused to society, as to shock our sense of justice. Accordingly, we find no abuse of the sentencing court’s discretion. This assignment of error is without merit. Finally, we have reviewed the pleadings and proceedings and find no errors patent on the face of the record.
DECREE
For the foregoing reasons, the convictions and sentences of the defendant, Gregory Cormier, are affirmed.
AFFIRMED.